**Gary Paul YOUNG, Appellant,**

v.

**Pamela Jane YOUNG, Appellee.**

No. 05–04–00388–CV.

Court of Appeals of Texas, Dallas.

June 24, 2005.

---

James D. Blume, Joshua H. Northam, Jennifer S. Stoddard, Kevin Wayne Vance, Blume & Stoddard, Dallas, for Appellant.

Benjamin Baker, Benjamin A. Baker, P.C., Sherman, for Appellee.

Before Justices BRIDGES, O'NEILL, and FITZGERALD.

## OPINION

ONEILL, Justice.

Gary Paul Young (Husband) appeals from the trial court's divorce decree. In three points of error, Husband contends the trial court erred in: (1) characterizing certain assets as community that he claims are his separate property; (2) assessing the value of certain assets; and (3) awarding Wife certain equitable liens. We sustain Husband's third point of error to the extent he contends the trial court erred in imposing an owelty of partition on partnership property. We reform the trial court's judgment to delete the owelty of partition provision. In all other respects, we affirm the trial court's judgment.

## Background

Husband and Wife were married. on June 28, 1994. Approximately seven years later, Wife filed for divorce. Prior to the marriage, Husband had formed DAX Enterprises, Inc. During the marriage, Husband and Wife entered into various business ventures. The source of the investment funds used in forming these businesses was contested at trial. Several assets that Husband claimed were his separate property were also in dispute.

Following trial, the trial court orally rendered judgment. Wife filed a motion for reconsideration. The trial court granted Wife's motion and the parties presented additional testimony as to the value of certain assets. The trial court signed a final judgment on January 7, 2004. The trial court rendered judgment that DAX was the alter ego of Husband. In addition to dividing the property, the trial court awarded Wife a money judgment and placed liens on community property awarded to Husband to secure that judgment. The trial court made findings of fact and conclusions of law. This appeal timely followed.

## Standard of Review

■ Findings of fact in a case tried to the court have the same force and effect as jury findings. See Gregory v. Sunbelt Sav., F.S.B., 835 S.W.2d 155, 158 (Tex. App.-Dallas 1992, writ denied). We review a trial court's fact findings by the same

standards we use to review the sufficiency of the evidence to support a jury's findings. *See Zieben v. Platt,* 786 S.W.2d 797, 799 (Tex.App.-Houston [14th Dist.] 1990, no writ).

When we review the findings for legal sufficiency, we consider only the evidence and inferences tending to support the finding and disregard all the evidence and inferences to the contrary. *See Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995). We uphold the finding if it is supported by more than a scintilla of evidence. *Id.* When reviewing findings of fact for factual sufficiency, we consider and weigh all of the evidence and set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam). In a bench trial, it is for the court, as trier of fact, to judge the witnesses, to assign the weight to be given their testimony, and to resolve any conflicts or inconsistencies in the testimony. *LaCroix v. Simpson,* 148 S.W.3d 731, 734 (Tex.App.-Dallas 2004, no pet.).

We review challenges to a trial court's conclusions of law as a matter of law. *Boyd v. Diversified Fin. Sys.,* 1 S.W.3d 888, 890 (Tex.App.-Dallas 1999, no pet.). When a party challenges conclusions of law on appeal, we independently evaluate those conclusions with limited deference to the trial court's application of the law to the facts. *Id.* at 890–91. The trial court abuses its discretion when it fails to apply the law correctly. *Id.* at 891.

### Characterization

In his first point of error, Husband contends the trial court erred in characterizing six items as community assets. He contends these assets are his separate property.

Property owned before marriage or acquired during marriage by gift, devise, or descent, is separate property. TEX. FAM. CODE ANN. § 3.001 (Vernon 1998). Community property consists of all property, other than separate property, acquired by either spouse during marriage. TEX. FAM. CODE ANN. § 3.002 (Vernon 1998). All property on hand at the dissolution of marriage is presumed to be community property. TEX. FAM. CODE ANN. § 3.003(a) (Vernon 1998). It is a rebuttable presumption, requiring a spouse claiming assets as separate property to establish the separate character by clear and convincing evidence. TEX. FAM. CODE ANN. § 3.003(b) (Vernon 1998). A trial court is charged with dividing the community estate in a "just and right" manner, considering the rights of both parties. TEX. FAM. CODE ANN. § 7.001 (Vernon 1998).

#### 1. DAX Enterprises, Inc.

Husband contends the trial court erred in its finding that DAX Enterprises, Inc. was his alter ego. DAX was Husband's separate property because he owned it prior to the marriage. *See* TEX. FAM. CODE ANN. § 3.001 (Vernon 1998).

Under certain circumstances, a spouse may be able to reach the assets of the other spouse's separately owned corporation. A finding of alter ego allows piercing of the corporate veil. Piercing the corporate veil, in turn, allows the trial court to characterize as community property assets that would otherwise be the separate property of a spouse. *Lifshutz v. Lifshutz,* 61 S.W.3d 511, 516 (Tex.App.-San Antonio 2001, pet. denied). In the divorce context, piercing the corporate veil allows the trial court to achieve an equitable result. *Id.*

In a divorce case, a finding of alter ego sufficient to justify piercing the

corporate veil requires: (1) unity between the separate property corporation and the spouse such that the separateness has ceased to exist; and (2) the spouse's improper use of the corporation damaged the community estate beyond that which might be remedied by a claim for reimbursement. *Lifshutz v. Lifshutz*, 61 S.W.3d at 517. In *Lifshutz*, the trial court pierced the corporate veil of the husband's corporation. The appeals court reversed. Although there was some evidence of unity between the corporation's and the husband's finances, the court held there was no evidence that the husband's misuse and dominance of the corporation resulted in a transfer of community property to the corporation. *Lifshutz*, 61 S.W.3d at 517–18.

In another case, the appellate court held the trial court's conclusion that the husband's corporation was not his alter was against the great weight and preponderance of the evidence. *See Zisblatt v. Zisblatt*, 693 S.W.2d 944, 955 (Tex.App.-Fort Worth 1985, writ dism'd). In *Zisblatt*, the husband had a separately owned corporation. The home purchased by the couple was in the corporation's name. The furniture in the couple's home was paid for and owned by the corporation. *Id.* at 947. The husband's income came from the corporation. He deposited his earned income into the corporate account. *Id.* at 955. In finding the husband's management of his separately owned corporation to constitute a fraud on the community, the court stated, "to uphold the fiction of [the corporation] as an entity separate from [the husband] would be a clear and material prejudice to the rights of [the wife] and the community estate and an evasion of an existing legal obligation of [the husband] to devote his time, talent, and industry to the community." *Id.*

Turning now to the facts of this case, the first requirement for piercing the corporate veil is unity between the spouse and the corporation. Husband was the sole employee of DAX. He alone was in charge of the day-to-day finances of the corporation. Wife put her income into the parties' personal account. Instead of doing the same, Husband kept his income in the DAX account. Wife testified that Husband routinely used the DAX account to pay personal expenses. Husband admitted to this practice. He argues, however, that such expenditures benefited the community estate. To the extent these personal expenses were community debts, the community did benefit. Husband, however, paid many debts for which he alone was responsible. He used the DAX account to pay for the daycare expenses for his daughter from a former marriage and make car payments and payments on a house he owned individually. Roger Johnson, a business partner of the Youngs testified that, in his opinion, Husband and DAX were one in the same. We conclude the evidence establishes a unity between Husband and DAX.

We turn now to the second requirement that the spouse's misuse of the corporation damaged the community estate. From 1995 through 2000, DAX's gross earnings amounted to $992,000. During this five-year period, Husband reported officer income of $40,000, officer loans of $31,260, and personal checks from the DAX account of $145,000. Near the time of the marriage the parties agreed to purchase a house. Husband told Wife the house would be in both of their names. Husband instead put the house in the corporation's name. Testimony at trial showed that many charges had been made on the DAX credit cards from locations where DAX had previously done work. However, Husband claimed that he had not been working during this time and that there were no invoices to produce showing income to DAX.

According to corporate records, there is a substantial amount of money unaccounted for. Husband's practice of commingling his income with that of the corporation supports the trial court's fraud finding. During the course of the marriage, Husband dedicated most of his time and talent to DAX. Essentially, the benefit received by the community from Husband's time and talent was the payment of some of its expenses. Labeling the vast majority of income as belonging to DAX, was an effective tool to enhance his separate property. Like the husband in *Zisblatt*, Husband placed many community assets in the corporation's name. Husband also paid himself a relatively small salary in relation to the income received by DAX. Moreover, he put his earned income, a community asset, right back into DAX.

We conclude the evidence in this case reveals Husband misused DAX to the extent it damaged the community estate. The evidence supports the trial court's finding that DAX was the alter ego of Husband.

### 2. 69 RV & Self Storage

 Husband contends the trial court mischaracterized the interest in the 69 RV partnership as community property. He asserts 69 RV is his separate property because it was purchased with separate funds.

 Without evidence of tracing the funds, testimony that property was purchased with separate funds, is insufficient to rebut the community presumption. *Boyd v. Boyd*, 131 S.W.3d 605, 612 (Tex. App.-Fort Worth 2004, no pet.). In *Boyd*, the husband sought economic contribution alleging that he used separate funds to reduce the mortgage on a home purchased during the marriage. He testified the money used to reduce the mortgage came from the sale of another house that was his

separate property. *Id.* at 613–14. In holding the evidence insufficient to rebut the community presumption, the court stated, "the trial court was left to surmise or speculate, based on [the husband's] testimony alone, that the proceeds from the sale of [the husband's] separate property were the source of funds that created his claim for economic contribution." *Id.* at 616–17. Several courts have held that testimony without any documentary evidence to trace the funds is insufficient to overcome the community presumption. *See Osorno v. Osorno*, 76 S.W.3d 509, 512 (Tex. App.-Houston [14th Dist.] 2002, no pet.) (husband's testimony insufficient without deposit slips or bank records tracing the source of the funds); *Robles v. Robles*, 965 S.W.2d 605, 616 (Tex.App.-Houston [1st Dist.] 1998, pet. denied) (op. on reh'g) (husband's testimony insufficient to rebut community presumption without documentary evidence to trace the funds used to purchase the property).

The 69 RV property was purchased during the marriage and, therefore, the community presumption applies. Husband contends the money used to purchase 69 RV came from his retirement money he had in three CD accounts. The three CDs were in the amounts of $30,000, $10,000, and $5,000. He contends he deposited the retirement money into the DAX account. He then wire-transferred the money for closing on the property from the DAX account. Husband had no documentation of the transfer of the CD money into the DAX account and he could not recall the dates.

In this case, Husband testified that at some point he cashed in three CDs and put the money into the DAX account. He alleged that he then wire-transferred $42,000 to cover the down payment on the 69 RV property. He provided no documentary evidence to substantiate his claim.

Wife, on the other hand, presented documentary evidence showing that $30,000 was deposited into the DAX account. She also showed that subsequent to that deposit, the DAX account had a negative balance. Documents introduced also showed that between the time that the DAX account had a negative balance and the time of the wire-transfer of the down payment on the 69 RV property, the only money deposited into the DAX account were payments for work completed by DAX. Husband presented no documentary evidence to support his claim that separate funds were used to pay the down payment on the 69 RV property. Wife, however, presented documentary evidence establishing that the down payment was paid with community funds. Husband failed to establish 69 RV as his separate property and, accordingly, the trial court did not err in characterizing it as community property.

### 3. Sun Shak Tans

Husband also contends the trial court erred in characterizing Sun Shak Tans as community property. Sun Shak Tans was acquired during the marriage. Husband testified the money for Sun Shak Tans came from the sale of a home he owned prior to the marriage. That money, however, did not go directly into Sun Shak Tans. Husband testified he used $100,000 from that sale to fund a car wash business between he and Wife and another couple, the Johnsons, in 1997. Mr. Johnson testified, however, that he understood that the $100,000 came out of the DAX account. Later that year, the Johnsons bought out the Young's interest in the car wash for $100,000, the amount of their initial investment. Husband contends the $100,000 the couple received in the buy-out of their investment was the same $100,000 of separate funds he initially invested. The Youngs used most of the $100,000 for living expenses. Husband says with the re-

mainder of the money, $12,000 was used to purchase the assets of Sun Shak Tans.

Like his testimony regarding the 69 RV property, Husband's testimony on Sun Shak Tans is insufficient to overcome the community presumption. Again, he provides no documentary evidence tracing the funds. Essentially, Husband's evidence tracing the funds was as follows: (1) he sold separate property (amount of sale not known); (2) he and Wife used $100,000 from the sale to invest in a business with another couple; (3) months later, their business partners bought out their interest in the business for $100,000; and (4) he and Wife lived off that money and used $12,000 of it to buy the assets of Sun Shak Tans. This evidence is insufficient to trace the proceeds from the sale of Husband's separate property to the purchase of the assets of Sun Shak Tans several years later.

### 3. 1987 Chris Craft Boat

■ Husband contends the trial court erred in characterizing the 1987 Chris Craft boat as community property because he contends he purchased it prior to the marriage. At trial, Husband testified that he "vaguely remembered we had it when we got married" and "I believe I had that before we were married." Wife, on the other hand, testified unequivocally that Husband bought the boat from his friend *after* they were married. The trial court resolved this conflicting testimony in favor of Wife. *See LaCroix*, 148 S.W.3d at 734. Accordingly, the trial court did not err in characterizing the 1987 Chris Craft boat as community property.

### 5. Boat Slip/Condominium

■ Husband contends the boat slip and condominium (collectively "boat slip") are his separate property because he had the lease on the boat slip since 1988 when he purchased the boat. He testified that

he *believed* he signed a lease that automatically renewed from year to year. He did not produce a copy of the lease. Following the marriage, the Youngs paid the lease payments from both the DAX account and their personal account.

 Depending upon the language in the lease, a holdover tenancy may be a new tenancy rather than a continuation of the original lease. *Bockelmann v. Marynick*, 788 S.W.2d 569, 571 (Tex.1990). In *Bockelmann*, a husband and wife leased a duplex. Prior to the lease's expiration, the wife moved out of the duplex. The husband continued to occupy the duplex after the lease expired and became delinquent on the rent. The lessors sued both the husband and wife for the unpaid rent. The trial court found the husband liable but not the wife. The court of appeals held the husband and wife were liable for the unpaid rent because her joint obligation under the lease continued through her husband's holdover period. *Id.* at 571. The supreme court, looking to the language of the lease, reversed. The lease in *Bockelmann* provided that if a tenant remained in possession of the leased premises after the lease expired, "a *new* tenancy from year to year shall be created . . ." *Id.* at 570. The supreme court held that the wife was not liable for the unpaid rent because she was not a tenant when the holdover term began and the new tenancy was created. *Id.* at 572.

If the boat slip lease provides that a holdover tenancy creates a new tenancy, then the leasehold interest would have been acquired during the marriage and, therefore, constitutes community property. It was Husband's burden to establish by clear and convincing evidence that the boat slip was his separate property. Husband did not produce a copy of the lease. Because the lease's language is controlling,

Husband failed to establish the boat slip as his separate property.

We overrule Husband's first point of error.

## Property Division

 In his second point of error, Husband asserts the trial court failed to make a just and right property division because it: (1) improperly characterized certain assets as community; (2) assessed improper values to certain assets; and (3) ordered Husband liable for their federal income tax liabilities. We have all ready concluded that the trial court properly characterized the assets of the parties. Thus, the trial court's characterization of property cannot support Husband's claim of an unjust property division.

Husband also asserts the property division is unjust because the trial court erred in assessing the value of certain properties. Specifically, Husband contends the trial court erred in assessing the value of 69 RV and Sun Shak Tans.

 In reviewing the trial court's valuation of a particular asset, we must first consider whether the trial court had sufficient evidence to support its valuation. *Naguib v. Naguib,* 137 S.W.3d 367, 374 (Tex.App.-Dallas 2004, pet. denied). If we determine the trial court's valuation was erroneous, we must then determine whether the trial court abused its discretion in dividing the estate. *Naguib,* 137 S.W.3d at 374. A property owner may testify as to fair market value if his testimony reveals that he is familiar with the market value of the property. *Redman Homes, Inc. v. Ivy,* 920 S.W.2d 664, 669 (Tex.1996).

The trial court found the fair market value of the community interest in the 69 RV partnership was $175,000. At trial, Wife presented the expert testimony of real estate appraiser James Edward Ja-

cobs. Jacobs appraised the 69 RV and assessed its value at $350,000. Husband's evidence of the 69 RV's value at trial consisted of his own testimony and that of Tim Armstrong, the other partner in 69 RV. Husband valued the property at $200,000. Armstrong valued 69 RV between $200,000 and $250,000.

At the hearing on the motion to reconsider, appraisals obtained by Husband were introduced into evidence. Larry Long appraised the 69 RV property and valued it at $260,000. Long's appraisal did not include, at Husband's request, sixteen completed storage units. Wife had her expert, Jacobs, prepare a supplemental report to add the value of the additional sixteen storage units to Long's appraisal. Jacobs's supplemental report suggested Long's appraised value would have been $296,000 with the inclusion of the additional units.

The trial court assessed the value of 69 RV in accordance with the appraisal prepared by Wife's expert witness. The appraisal prepared by Husband's expert witness failed to include certain improvements to the property. We conclude the trial court had sufficient evidence to support its assessed value of 69.

As to Sun Shak Tans, the trial court found its fair market value to be $20,000.[1] Wife testified at trial that Sun Shak Tans was worth approximately $17,000 to $18,000. She testified that two other tanning salons in the area had recently sold for $37,500 and $40,000. Husband, on the other hand, valued the salon at approximately $180,000.

At the hearing on Wife's motion for rehearing, Joan Summers's appraisal was introduced into evidence. She prepared the appraisal for Husband. She assessed the value of Sun Shak Tans at $130,000.

The testimony as to the value of Sun Shak Tans varied greatly. There is evidence that does support the trial court's assessment. Accordingly, we conclude the trial court did not err in its value assessments of 69 RV and Sun Shak Tans.

■■■■ Husband also contends the trial court erred in ordering him responsible for the parties federal income tax liabilities during the marriage. The parties' liabilities are factors to be considered in making a just and right division. *Finn v. Finn*, 658 S.W.2d 735, 748 (Tex.App.Dallas 1983, writ ref'd n.r.e.). A divorce court has authority and discretion to impose the entire tax liability of the parties on one spouse. *Benedict v. Benedict*, 542 S.W.2d 692, 698 (Tex.Civ.App.—Fort Worth 1976, writ dism'd). In this case, it is undisputed that DAX had a substantial amount of unreported income. In light of the manner in which Husband managed DAX and controlled its finances, we conclude the trial court did not err in placing responsibility for the parties' income tax liability on Husband.

### Liens

■■■■ In his last point of error, Husband contends the trial court erred in placing liens on certain assets to secure the money judgment to Wife.

■■■■ A trial court may impose an equitable lien against community property to secure one spouse's obligation to pay a monetary award that represents the consideration for the other spouse's relinquishment of his or her interest in the marital estate. *Magallanez v. Magallanez*, 911 S.W.2d 91, 94 (Tex.App.-El Paso

---

1. In his brief, Husband asserts the trial court valued Sun Shak Tans at $115,000. In finding of fact 21, however, the trial court states, "The fair market value of the sole proprietorship known as Sun Shak Tans is $20,000".

1995, no writ). The trial court awarded Wife an equitable lien in certain community assets that the trial court awarded to Husband. The purpose of the lien was to secure the money judgment awarded to Wife. We conclude the trial court did not err in placing a lien on assets it found to belong to the community.

■ Husband also contends the trial court erred in placing an owelty of partition on the entire 69 RV property. We agree.

■ Partnership property is owned by the partnership itself and not by the individual partners. *Marshall v. Marshall,* 735 S.W.2d 587, 595 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). A partner's partnership interest, the right to receive his share of the profits and surpluses from the business, is the only property right a partner has that is subject to a community or separate property characterization. *Id.*

The trial court found that 69 RV was partnership property. The trial court awarded the community interest in 69 RV to Husband. Accordingly, Husband owns one-half of the partnership and Tim Armstrong owns the other half. Because 69 RV belongs to the partnership, the trial court erred when it placed an owelty of partition against the entirety of the partnership property.

■ Husband also complains of the judgment ordering him to pay the money judgment within seven days. He contends the trial court erred because this payment provision in the judgment conflicted with the trial court's oral rendition that the judgment be paid within thirty days.

■ Wife contends this issue is moot because the case has proceeded far beyond the thirty-day period Husband contends the trial court should have provided for in the judgment. The mootness doctrine dictates that courts avoid rendering advisory opinions by only deciding issues that present a "live" controversy at the time of the decision. *Camarena v. Texas Employment Comm'n,* 754 S.W.2d 149, 151 (Tex.1988). An issue becomes moot when: (1) it appears that one seeks to obtain a judgment on some controversy, when in reality none exists; or (2) when one seeks a judgment on some matter which, when rendered for any reason, cannot have any practical legal effect on a then-existing controversy. *Texas Health Care Info. Council v. Seton Health Plan, Inc.,* 94 S.W.3d 841, 846–47 (Tex.App.-Austin 2002, pet. denied). Husband's request for a thirty-day time period is no longer a live controversy because that time period has passed. Reforming the trial court's judgment to order payment within thirty days would have no practical legal effect. We conclude this issue is moot.

■ Finally, Husband contends the trial court erred in ordering him to pay all court costs. He argues that rule 131 which allows for a successful party to a lawsuit to recover court costs is inapplicable to divorce actions. *See* TEX. R. CIV. P. 131. Regardless of the applicability of rule 131, the family code provides that in a divorce suit, the trial may award costs to a party as it considers reasonable. *See* TEX. FAM. CODE ANN. § 6.708(a) (Vernon 1998). Accordingly, the trial court did not err in ordering Husband to pay court costs.

We sustain Husband's third point of error to the extent he complains of the owelty of partition against the partnership property.

We reform the trial court's judgment to delete the award of the owelty of partition. In all other respects, we affirm the trial court's judgment.