**LOVE TERMINAL PARTNERS, L.P., Virginia Aerospace, LLC, and Small Community Airlines, Inc., Appellants**

v.

**CITY OF DALLAS, Laura Miller, in her official capacity, Angela Hunt, in her official capacity, Linda Koop, in her official capacity, Pauline Medrano, in her official capacity, Ron Natinsky, in his official capacity, Ed Oakley, in his official capacity, and Steve Salazar, in his official capacity, Appellees.**

No. 05–07–00383–CV.

Court of Appeals of Texas, Dallas.

June 13, 2008.

---

William A. Brewer III, Michael J. Collins, C. Dunham Biles, Bickel & Brewer, Emil Lippe, Jr., Law Offices of Lippe & Associates, Dallas, for Appellant.

Frank C. Brame, Robert C. Walters, Vinson & Elkins, L.L.P., Dallas, James Pinson, Dallas, for Appellee.

Before Justices WRIGHT, O'NEILL and FRANCIS.

## OPINION

Opinion by Justice O'NEILL.

This case involves the impact of the federal Wright Amendment Reform Act of 2006 ("Reform Act") on claims for violations of the Texas Open Meetings Act ("TOMA"). *See* Pub.L. No. 109-353, §§ 1-7, 120 Stat.2011 (2006); TEX. GOV'T CODE ANN. §§ 551.001-.146 (Vernon 2004 & Supp.2007). Love Terminal Partners, L.P. and Virginia Aerospace, LLC (collectively, "Terminal Partners") sued the City of Dallas, its mayor, Laura Miller, and six city council members [1], Angela Hunt, Linda Koop, Pauline Medrano, Ron Natinsky, Ed Oakley and Steve Salazar (collectively, "City Defendants"), for declaratory and injunctive relief concerning TOMA violations the Terminal Partners claim arose from the City Defendants' closed-door negotiations of an agreement to limit passenger air traffic at Love Field.[2] Small Community Airlines, Inc. ("SCA") intervened alleging TOMA claims as well as violations of the Texas Free Enterprise and Antitrust Act of 1983. TEX. BUS. & COM.CODE ANN. §§ 15.01-.26 (Vernon 2002). The City Defendants filed a Plea to the Jurisdiction seeking dismissal of the lawsuit on the basis, among others, of mootness. The trial court granted the plea as to SCA's TOMA allegations and all of the Terminal Partners' claims. The trial court then entered an order severing SCA's non-TOMA claims into a separate case.

Terminal Partners and SCA appealed the dismissal. In three issues, the Terminal Partners contend the trial court erred in granting the plea because (1) the doctrine of mootness does not apply to their claims or the relationship between the Love Field Agreement and the Reform Act; (2) the City Defendants' TOMA violations render the Love Field Agreement void; and (3) their claims are not moot. SCA raises its own three issues relating to the trial court's personal jurisdiction over the City Defendants and its subject matter jurisdiction to interpret the federal Reform Act. Finding no reversible error, we affirm the trial court's judgment.

## Background

There are two principal airports serving passenger traffic in Dallas: Dallas Love Field Airport ("Love Field") and Dallas Fort Worth International Airport ("DFW"). In order to encourage use of DFW, Congress has always imposed limits on traffic at Love Field.[3] The need for

---

1. Angela Hunt, Linda Koop, Pauline Medrano, Ron Natinsky, Ed Oakley and Steve Salazar were members of the Dallas City Council and the ad hoc negotiating committee for Dallas.

2. The agreement resulting from the closed-door negotiations is entitled the "Contract Among the City of Dallas, the City of Fort Worth, Southwest Airlines Co., American Airlines, Inc., and DFW International Airport Board Incorporating the Substance of the Terms of the June 15, 2006 Joint Statement Between the Parties to Resolve the 'Wright Amendment Issues'" ("Love Field Agreement").

3. An exhaustive history of the federal government's regulation of Love Field traffic is contained in Judge Sidney Fitzwater's memorandum opinion and order in *Love Terminal Partners, L.P. v. City of Dallas, et al*, 527 F.Supp.2d 538 (N.D.Tex.2007). Judge Fitzwater dismissed the Terminal Partners' federal lawsuit concluding "the Reform Act manifests Congress' intent to incorporate all of the [Love Field Agreement's] terms, including demolition of the LTP Terminal and the Contract's specific allocation of Love Field gates." *Id.* at 557.

this protection, however, has decreased over time, and in early 2006, members of Congress suggested that Dallas and Fort Worth jointly propose a long-term solution to the statutory limits on passenger air traffic at Love Field.[4]

After several months of secret negotiations, Dallas, among others, issued the "Joint Statement among the City of Dallas, the City of Fort Worth, Southwest Airlines, American Airlines, and DFW International Airport to Resolve the 'Wright Amendment Issues'" ("Joint Statement"). A few weeks later, the Dallas City Council authorized execution of an agreement that was consistent with the terms of the Joint Statement. On July 11, 2006, Dallas executed the Love Field Agreement. Under the contract, Dallas bound itself to the terms of the Joint Statement, with certain modifications.

Both the Joint Statement and the Love Field Agreement provided for the demolition of a private passenger terminal at Love Field ("LTP Terminal") in which the Terminal Partners hold a leasehold interest and from which SCA had planned to operate. Under the Love Field Agreement, specifically, Dallas is required to use its governmental powers to dismantle or demolish the LTP Terminal to ensure it is not used for passenger service.

In September 2006 the United States Senate and United States House of Representatives passed the Reform Act and, in October 2006, the President signed the bill into law. The Reform Act explicitly incorporates many of the Love Field Agreement's provisions. Among other pertinent provisions, the Reform Act confers on Dal-

las the authority to "determine the allocation of leased gates and manage Love Field in accordance with contractual rights and obligations existing as of the effective date of this Act for certificated air carriers providing scheduled passenger service at Love Field on July 11, 2006." Reform Act § 5(a).

In multiple actions, the Terminal Partners sued the City and its council members. In this case, the Terminal Partners and SCA claim the City Defendants violated TOMA in reaching the Love Field Agreement. The trial court dismissed the case as moot because Congress gave the contract the force of law when it passed the Reform Act.

### Discussion

We will consider the Terminal Partners' third issue first. They contend that the trial court erred when it decided their claims are moot and granted the City Defendants' plea to the jurisdiction. A plea questioning the trial court's jurisdiction raises a question of law that we review de novo. *City of Farmers Branch v. Ramos*, 235 S.W.3d 462, 466 (Tex.App.-Dallas 2007, no. pet.) (citing *State v. Holland*, 221 S.W.3d 639, 642 (Tex.2007)).[5] We focus first on a plaintiff's petition to determine whether the facts pled affirmatively demonstrate that jurisdiction exists. *Id.* We construe pleadings liberally, looking to the pleader's intent. *Id.* If relevant undisputed evidence negates jurisdiction, then the plea to the jurisdiction must be granted. *Id.* Accordingly, for the purposes of determining the merits of the trial court's dismissal, we will assume the City Defen-

---

4. The primary passenger air traffic limits were first enacted as Section 29 of the federal International Air Transportation Act of 1979, Pub.L. No. 96–192, § 29, 94 Stat. 35 (1980) ("Wright Amendment").

5. The Terminal Partners and SCA argue that our decision in the *Farmers Branch* case should compel us to reverse the trial court's dismissal of their TOMA claims. Their argument is misguided because the essential fact that renders their claims moot—the Reform Act—was not present in our earlier decision.

dants violated TOMA before issuing the Joint Statement and signing the Love Field Agreement.

■ The Terminal Partners contend that because the City Defendants' conduct leading up to Dallas' execution of the Love Field Agreement violated TOMA, the resulting contract is void [6] and, therefore, the Reform Act does not render their TOMA claims moot. We disagree. TOMA expressly provides "[a]n action by a governmental body in violation of this chapter is voidable"—not void or void ab initio.[7] Tex. Gov't Code Ann. § 551.141 (Vernon 2004). The terms have distinct legal meanings. *Buddy Gregg Motor Homes, Inc. v. Motor Vehicle Bd.*, 179 S.W.3d 589, 618 (Tex. App.-Austin 2005, pet. denied). If an action is void or void ab initio, the transaction is a nullity. *Swain*, 74 S.W.3d at 146. If, however, conduct is merely voidable, the act is valid until adjudicated and declared void. *Id.*

■ Before the Reform Act was enacted, there had been no adjudication declaring the Love Field Agreement void. When the Reform Act incorporated the contract, Dallas' obligations, including demolition of the LTP Terminal, became a matter of federal law. Reform Act § 5. The City Defendants argue that since Dallas' performance is now compelled by federal law, any challenge to the Love Field Agreement is moot. We agree.

■ The mootness doctrine dictates that courts avoid rendering advisory opinions by only deciding issues that present a "live" controversy at the time of the deci-

sion. *Farmers Branch*, 235 S.W.3d at 469 (citing *Camarena v. Tex. Employment Comm'n*, 754 S.W.2d 149, 151 (Tex.1988); *Young v. Young*, 168 S.W.3d 276, 287 (Tex. App.-Dallas 2005, no pet.)). An issue becomes moot when (1) it appears that one seeks to obtain a judgment on some controversy, which in reality does not exist or (2) when one seeks a judgment on some matter which, when rendered for any reason, cannot have any practical legal effect on a then-existing controversy. *Id.* (citing *Young*, 168 S.W.3d at 287). Any decision by the trial court on the validity of the Love Field Agreement would have been advisory and, thus, improper. We overrule Terminal Partners' third issue. Our resolution of the Terminal Partner's third issue obviates our need to reach their first and second issues and SCA's issues as to the trial court's personal jurisdiction over the City Defendants and subject matter jurisdiction over the TOMA claims relating to the Reform Act.

## Conclusion

Finding no reversible error, we affirm the trial court's judgment.

■

---

**6.** To argue that a TOMA violation renders a municipal act void ab initio, Terminal Partners rely on *City of San Marcos v. Lower Colo. River Auth.*, 508 S.W.2d 403, 412 (Tex.Civ. App.-Austin 1974), *aff'd as modified*, 523 S.W.2d 641, 642–43 (Tex.1975), which was decided not only before TOMA was codified, but also thirteen years before the term "voidable" was added to TOMA's predecessor.

**7.** The distinction between "voidable" and "void" is the same for the present purposes as the distinction between "voidable" and "void ab initio". *Swain v. Wiley Coll.*, 74 S.W.3d 143, 146 (Tex.App.-Texarkana 2002, no pet.) (void—voidable distinction); *Diversified, Inc. v. Walker*, 702 S.W.2d 717, 721 (Tex.App.-Houston[1st Dist.] 1985, writ ref'd n.r.e.) (void—void ab initio distinction).