

In The

Court of Appeals

Seventh District of Texas at Amarillo

No. 07-21-00008-CV

JEFFREY J. MARKEY, APPELLANT

V.

KATHRYN L. MARKEY, APPELLEE

On Appeal from the 53rd District Court
Travis County, Texas
Trial Court No. D-1-FM-19-003784, Honorable Scott H. Jenkins, Presiding

August 13, 2021

MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Jeffrey J. Markey appeals from a final divorce decree. It ended his marriage to Kathryn L. Markey. The two issues before us concern 1) the amount of child support the trial court ordered him to pay and 2) the supposedly skewed property division meted by the court due to its failure to value income tax liabilities. We affirm.[1]

---

[1] Because this appeal was transferred from the Third Court of Appeals, we are obligated to apply its precedent when available in the event of a conflict between the precedents of that court and this Court. *See* TEX. R. APP. P. 41.3.

*Issue One – Child Support*

Jeffrey initially contends that the trial court "abused [its] discretion by relying only on earning capacity, and not current earnings, in calculating child support." We overrule the issue.

The trial court calculated Jeffrey's monthly child support obligation "in accordance with the [statutory] percentage guidelines." The foundation underlying such a calculation is the parent's monthly net resources. *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996); *Supakorndej v. Xu*, No. 03-20-00177-CV, 2021 Tex. App. LEXIS 79, at *10–11 (Tex. App.—Austin Jan. 7, 2021, pet. filed) (mem. op.). "Net resources" encompass a myriad of components, including wages, salary, income from personal service, interest income, dividends, royalties, self-employment income, net rental income, severance pay, retirement benefits, pensions, trusts, annuities, capital gains, social security, certain disability benefits, unemployment benefits, worker's compensation benefits, interest from notes, gifts and prizes, spousal maintenance, and alimony. TEX. FAM. CODE ANN. § 154.062(b)(1)–(5) (West Supp. 2020). Furthermore, various assets that do not produce current income may also be factored into the "net resources" equation. *See id.* § 154.067(a) (West 2014) (stating that "[w]hen appropriate, in order to determine the net resources available for child support, the court may assign a reasonable amount of deemed income attributable to assets that do not currently produce income"). Additionally, in calculating a parent's income for purposes of assessing child support, statute prescribes that it be done so on an annual basis, where feasible, and then recalculated to determine an average monthly gross. *Id.* § 154.061(a). In urging his point at bar, Jeffrey ignored each of the foregoing.

Instead, he based his contention on his vision of "*current* monthly net resources" and "current earnings." Such apparently consisted only of income paid him from one business (High Altitude Services) that he bought in October of 2019 and about nine months before trial in July of 2020. So, to begin with, we are asked to assess the trial court's decision through an overly narrowed nine-month window, as opposed to the annual pane mentioned in § 154.061(a). Why the statutory prescription in § 154.061(a) can or should not be heeded at bar is a matter that Jeffrey does not explain.

Nor does he explain why the trial court could not consider other evidentiary components susceptible to being factored into the net resources equation. They include evidence of 1) his income for the years 2016, 2017, and 2018 being $221,246, $306,000, and $350,000, respectively; 2) his financial interest in approximately 13 businesses having a total fair market value approximating $870,000 as of March 2020; 3) his total assets of $1,642,552 and net worth of $867,380 as of August 2019, or 4) the $92,597 in cash or liquid assets he had in June of 2019.[2] This default is especially significant given that a parent's duty to support is not restricted to his ability to pay from *current earnings*, but extends to his ability to pay from any and all sources that might be available. *In re E.D.F.*, No. 07-12-00470-CV, 2014 Tex. App. LEXIS 11286, at *9 (Tex. App.—Amarillo Oct. 9, 2014, pet. denied) (mem. op.); *In re J.D.D.*, 242 S.W.3d 916, 922 (Tex. App.— Dallas 2008, pet. denied).

Instead, Jeffrey hangs his argument upon the trial court's utterance of the phrase "earning capacity." It did so when discussing with counsel the manner of calculating his support obligation. From that utterance, Jeffrey posits that the trial court erred in basing

---

[2] Even if his 13 business interests did not currently produce income, a deemed income could have been assigned them by the trial court when calculating Jeffrey's child support obligation.

3

his decision upon the concept of earning potential without making requisite statutory findings. *See* TEX. FAM. CODE ANN. § 154.066(a) (stating that if "the actual income of the obligor is significantly less than what the obligor could earn because of intentional unemployment or underemployment, the court may apply the support guidelines to the earning potential of the obligor"). The court's words read in context though reveal little intent to rely on earning potential. Indeed, it was responding to comments by Jeffrey's attorney urging the court to consider only what his client's income was from High Altitude Services given the effect of the pandemic on that income source. The trial court countered by attempting to explain that the window through which it was to make its calculations was not so restricted. And, it was correct.

In short, Jeffrey's calculations were based upon too narrow of a window in time. In coupling that with his failure to explain why the trial court could not incorporate the other components mentioned above into its analysis, we hold that he failed to establish an instance of abused discretion. *See In re C.P.K.*, No. 07-17-00287-CV, 2018 Tex. App. LEXIS 3326, at * 5 (Tex. App.—Amarillo May 10, 2018, no pet.) (mem. op.) (noting that the appellant "did not explain why it was infeasible to utilize the twelve-month period implicit in § 154.061(a) under the circumstances at bar" and concluding that no abuse was shown "[g]iven the questionable basis upon which [appellant] began her calculations").

*Issue Two – Valuing a Tax Liability*

Next, Jeffrey argues that the trial court abused its discretion by 1) not valuing the couple's federal income liability for 2018 and 2019 as a prerequisite to dividing the

4

community estate, 2) failing to accept his "estimate" as to what such liability is, and 3) effectively dividing the community estate in proportions inconsistent with its purported intent. We overrule the issue.

First, and contrary to Jeffry's contention, a court does not abuse its discretion in dividing the community estate simply because it did not first calculate income tax liability. It may divide the estate without first undertaking same. *Quijano v. Quijano*, 347 S.W.3d 345, 352–53 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (wherein the appellant urged a complaint akin to that at bar and holding that "Guillermo has not demonstrated that the trial court abused its discretion in dividing the community estate without evidence establishing specific amounts for the parties' 2008 and 2009 tax liabilities").

Second, as fact-finder, the trial court is free to credit and discredit the evidence and testimony of a party. Here, Jeffrey's "estimates" regarding his tax liabilities for 2018 and 2019 were just that, "estimates." So too were they a range of "estimates," as opposed to one definitive sum. Indeed, he admitted that he had yet to compile the information needed to file the requisite returns which would render certain any of those "estimates." Furthermore, those "estimates" included tax liability attributable to selling assets which were his sole and separate property. Contrary to his suggestion, these circumstances fall short of evincing the kind of "positive, unimpeached and uncontradicted testimony" which may not be arbitrarily disregarded. *See Sandoval v. Hartford Cas. Ins. Co.,* 653 S.W.2d 604, 607 (Tex. App.—Amarillo 1983, no writ) (stating that "positive, unimpeached and uncontradicted testimony of a witness may not be arbitrarily discredited or disregarded . . . especially when the testimony is so clear that it is unnecessary to speculate on the witness' veracity"). Simply put, we cannot say that the trial court abused

5

its discretion by opting not to accept his "estimates" as binding and conclusive evidence of actual tax liability.[3]

Third, the trial court did reveal its intent to award Kathryn 55% of the community estate and Jeffrey 45%. Foisting the tax liability on him allegedly skewed the division away from that intended goal and somehow rendered the division an instance of abused discretion, in Jeffrey's view. Yet, a trial court has the discretion to place the entire tax liability of the parties on one spouse. *Young v. Young*, 168 S.W.3d 276, 286 (Tex. App.—Dallas 2005, no pet.). This is true even if the exact amount of that tax liability is unknown. *In re Marriage of C.A.S.*, 405 S.W.3d 373, 388 (Tex. App.—Dallas 2013, no pet.). Furthermore, one attacking the division of the community estate has the burden to show same was manifestly unjust and unfair. *Bradshaw v. Bradshaw*, 555 S.W.3d 539, 543 (Tex. 2018) (quoting *Hedtke v. Hedtke*, 112 Tex. 404, 248 S.W.21, 23 (Tex. 1923)) (stating that the estate's division should be corrected on appeal only when the disposition made is manifestly unjust and unfair). Jeffrey cited us to no authority holding that a division is manifestly unjust or unfair simply because it did not actually achieve the trial court's intended goal.

We affirm the trial court's judgment.


Brian Quinn
Chief Justice

Publish.

---

[3] Regarding the tax liabilities, the trial court stated: "I'm not giving dad any credit for that. And we don't know what they are because I don't think there was clear enough evidence as to what they are. We know there was a prepayment of 40 grand on [sic] 2018. There might be more, but it's too ambiguous."