**AFFIRMED; Opinion Filed June 16, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00501-CV

**JOSEPH REGECI, Appellant**
**V.**
**CAROL REGECI, Appellee**

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-50134-06**

## MEMORANDUM OPINION

Before Justices Lang-Miers, Myers, and Lewis
Opinion by Justice Myers

In 2006, Joseph Regeci and Carol Regeci were divorced, and the divorce decree divided the marital estate pursuant to the parties' agreement. The parties later filed petitions for enforcement of the divorce decree's requirements about the sale of the marital home. The trial court ordered the house sold and the proceeds divided, with Joseph Regeci receiving $20,000 more than Carol Regeci. Joseph Regeci appeals the trial court's order of enforcement of the 2006 divorce decree. Appellant brings one issue on appeal contending the trial court abused its discretion by modifying the 2006 property division in violation of section 9.007(a) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 9.007(a) (West 2006). We affirm the trial court's judgment.

# BACKGROUND

The parties were divorced on September 8, 2006 pursuant to an agreed decree of divorce. The decree equally divided the debt secured by the house, "including principal, interest, tax, and insurance escrow," between the parties. The decree also ordered the parties to sell the house after making repairs "necessary to get it ready for sale." The decree required that the repairs "be done as directly as the parties can make it happen," but the decree did not set a deadline for completing the repairs or listing the house. The decree also required the parties to fund a joint account with $10,000—appellant was to provide $7,000 and appellee was to contribute $3,000— to make the repairs, limited the repairs to $10,000 unless the parties consented in writing to exceed that amount, and provided that any funds remaining in the joint account would be shared equally between the parties. Upon completing the repairs, the parties were to list the house with a real estate broker, who would sell the house for a price agreed to by the parties or under terms and conditions determined by the realtor. The decree also provided that the parties could reside in the house "and equally shall continue to make all payments of principal, interest, taxes, and insurance on the property until the closing on the sale of the Homestead." The parties were to share equally in the expense of the maintenance and repairs necessary to keep the property in its then-present condition. Following the sale of the house, the net proceeds were to be divided equally.

The parties did not fund the $10,000 joint account as required. Appellant paid only $4,000 of the required $7,000. Appellee paid the full $3,000, but her subsequent withdrawals from the account for purposes other than necessary repairs to prepare the house for sale reduced her contribution to less than $2,000.

Appellant and appellee both continued to reside in the house until January 2007, when appellee moved out. Appellant remained in the house. After appellee moved out, she continued

to pay her share of the principal and interest for the debt secured by the house and her share of the insurance and taxes on the house until March 2009 when she stopped paying. After that, appellant made the entire monthly payments for the principal, interest, insurance, and taxes, totaling over $89,000 since appellee stopped paying. When appellee quit paying, appellant was making less than $20,000 per year. Appellant testified that he had to cash in his retirement fund to continue to pay the mortgage.

After appellee moved out, the house suffered roof damage in a storm. Appellant testified it took over a year to resolve the insurance claim with the insurer, but he received the last check from the insurer in June 2010. Appellant had the roof and internal damage from the storm repaired in March 2012; all but $540 of the repair was covered by insurance. Also, at some point, the air conditioners in the house stopped working, and appellant had them replaced in September 2012 for $11,500. The ductwork was repaired at a cost to appellant of $1,760.56. Appellant testified he also paid $2,195.07 on additional repairs to prepare the house for sale, including painting and wallpapering the house. Appellant testified that appellee refused to cooperate with him about getting the necessary pre-sale repairs to the house made. Appellant also testified he never refused to work with appellee about getting the house sold, but he stated that appellee would not discuss the necessary pre-sale repairs with him. Appellant testified that when appellee quit paying on the mortgage, the principal balance was $79,870; when the house was sold, the principal balance was $54,051.91, a difference of $25,818.09 solely due to appellant's payments.

Appellee testified that when she moved out in January 2007, appellant told her he would remain in the house, make the necessary repairs, and have the house on the market within six months. Appellee paid another $31,800 toward the mortgage payments after moving out of the house. In March 2009, appellee stopped paying toward the mortgage when the money in her

savings account ran out and she could not make ends meet. At that time, she met with appellant, explained she was "financially strapped," and asked him to sell the house immediately. Appellee testified that appellant refused to put the house on the market. When she contacted appellant about selling the house, he told her the painting was not completed. At one point, appellee presented a buyer to appellant, but he refused to sell because he would lose too much money. In the fall of 2011, she contacted appellant about selling the house, and he said, "what's the hurry?" Appellee testified that on another occasion in 2011, she asked appellant to agree to sell the house, "[a]nd he told me, no, he wasn't going to sell the house. And if I got an attorney he would get a better attorney, and he would have me in court for a long time."

By May 2012, the house had not been sold or listed with a real estate broker, and appellant continued to reside at the house. Appellee filed a petition to enforce the property division in the divorce decree and requested that the enforcement order clarify the decree by specifying a reasonable time for appellant to comply with the decree. Appellant also filed a petition for enforcement asking that appellee provide a full accounting of the joint account; that she fund the joint account in the amount she misappropriated from the account; that she pay appellant the amount he paid for her share of the mortgage, taxes, and insurance he had paid since March 2009; and that she pay her share of the maintenance and repair of the house since she moved out.[1] Appellee filed an amended motion to enforce asserting appellant had breached the agreed decree by refusing to sell the house, and she requested an offset for the amount of interest, taxes, and insurance she paid on the house after moving out in January 2007 from any damages appellant may have incurred from her failure to pay one-half of the principal, interest, taxes and insurance after March 2009.

---

[1] In the trial court, appellant also sought reimbursement for half the homeowners association dues he had paid since the divorce. However, appellant does not make that argument on appeal.

The trial court appointed a receiver to sell the house. The parties agreed that appellant would pay the receiver $3,300 to make necessary repairs and that appellant would be reimbursed the $3,300 out of the proceeds of the sale of the house. The net proceeds from the sale of the house, $170,937.15, were placed in the registry of the court.[2] The court ordered that appellant receive a check for $95,468.58 and that appellee receive a check for $75,468.57. The court did not provide any explanation for awarding appellant $10,000 more than half the proceeds and appellee $10,000 less than half the proceeds.

The court stated in its November 6, 2012 interlocutory order to enforce property division that appellee's "obligation to pay one-half of the mortgage" after March 2009 was "fully offset by [appellant's] refusal to move out of the Property and sell the Property in compliance with the Final Decree."

The parties did not request the trial court make findings of fact and conclusions of law, and the trial court did not make written findings of fact and conclusions of law.

**STANDARD OF REVIEW**

We review the trial court's ruling on a post-divorce motion for enforcement or clarification of a divorce decree under an abuse-of-discretion standard. *Hollingsworth v. Hollingsworth*, 274 S.W.3d 811, 815 (Tex. App.—Dallas 2008, no pet.); *Gainous v. Gainous*, 219 S.W.3d 97, 103 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). The trial court abuses its discretion only when it acts without reference to any guiding rules or principles, that is, when it acts arbitrarily or unreasonably. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238,

---

[2] In the Statement of Facts section of appellant's brief, he states that the sale price of the house, $245,000, was $40,000 less than the appraised value. However, the decree stated, "The property shall be sold for a price that is mutually agreeable to [appellee] and [appellant]." The attorney for each party signed a letter stating, "The parties agree with the contract for sale negotiated by . . . the Receiver, as evidenced by their signatures on the contract for sale." The contract for sale was attached to appellant's motion for an evidentiary hearing to distribute the sale proceeds. The contract states the selling price was $245,000, and it is signed by both appellant and appellee. Because appellant agreed to the selling price of the house, any complaint appellant has about the sale price being $40,000 less than the appraised value lacks merit.

241–42 (Tex. 1985); *Medicus Ins. Co. v. Todd*, 400 S.W.3d 670, 681 (Tex. App.—Dallas 2013, no pet.) (citing *Downer*).

Oral statements by the trial court do not constitute findings of fact and conclusions of law, and the court of appeals may not look to the trial court's oral comments as being a substitute for findings of fact and conclusions of law. *In re W.E.R.*, 669 S.W.2d 716, 716 (Tex. 1984) (per curiam). When a trial court makes no separate findings of fact or conclusions of law, we must draw every reasonable inference supported by the record in favor of the trial court's judgment. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Hollingsworth*, 274 S.W.3d at 815. We imply all findings of fact necessary to support the judgment that are supported by the evidence. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). "[T]he judgment of the trial court must be affirmed if it can be upheld on any legal theory that finds support in the evidence." *Lassiter v. Bliss*, 559 S.W.2d 353, 358 (Tex. 1977), *overruled on other grounds, Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768 (Tex. 1989); *Hollingsworth*, 274 S.W.3d at 815. Nonetheless, in cases in which the appellate record includes the reporter's record, the trial court's implied fact findings are not conclusive and may be challenged for legal and factual sufficiency of the evidence supporting them. *Gainous*, 219 S.W.3d at 103.

In evaluating the legal sufficiency of the evidence to support a finding, we must determine whether the evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P.*, 234 S.W.3d 726, 736 (Tex. App.—Dallas 2007, pet. denied). We view the evidence in the light favorable to the finding, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). To evaluate the factual sufficiency of the evidence to support a finding, we consider all the evidence and set aside the finding only if the evidence

supporting it is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Young v. Young*, 168 S.W.3d 276, 281 (Tex. App.—Dallas 2005, no pet.). We review implied legal conclusions de novo. *Bob Montgomery Chevrolet, Inc. v. Dent Zone Cos.*, 409 S.W.3d 181, 188 (Tex. App.—Dallas 2013, no pet.); *Turner v. Mullins*, 162 S.W.3d 356, 364 (Tex. App.—Fort Worth 2005, no pet.). In a bench trial, it is for the court, as the trier of fact, to judge the credibility of the witnesses, assign the weight to be given their testimony, and to resolve any conflicts or inconsistencies in the testimony. *Young v. Young*, 168 S.W.3d 276, 281 (Tex. App.—Dallas 2005, no pet.).

### ENFORCEMENT OF DIVORCE DECREE

A party may bring suit to enforce a divorce decree. FAM. § 9.001(a) (West Supp. 2013). The trial court may then enter orders to enforce the property division, to assist in the implementation of the division, or to clarify the decree. *Id.* § 9.006(a) (West Supp. 2013). However, "[a] court may not amend, modify, alter, or change the division of property made or approved in the decree . . . ." *Id.* § 9.007(a). An order that violates this provision "is beyond the power of the divorce court and is unenforceable." *Id.* § 9.007(b). Thus, a clarification or enforcement order must be consistent with the decree and may not be used to make a substantive change in a decree after it becomes final. *Shanks v. Treadway*, 110 S.W.3d 444, 449 (Tex. 2003); *DeGroot v. DeGroot*, 369 S.W.3d 918, 922 (Tex. App.—Dallas 2012, no pet.).

It appears from appellant's brief that he is arguing the trial court modified the decree by not requiring appellee to pay for (1) half of the expenses necessary to repair and maintain the house, and (2) half of the principal, interest, and tax payments on the property after March 2009.

–7–

He also seems to argue that the trial court erred by not providing for reimbursement of the $3300 he provided to the receiver to prepare the house for sale.[3]

The trial court ordered that appellant receive a check for $10,000 more than one-half of the proceeds from the sale of the home. However, the trial court also entered orders that appellant pay appellee's attorney's fees of $8,810, and the court ordered that amount be deducted from appellant's portion of the proceeds from the sale of the home.[4] Presuming that the trial court's order for the amount of the checks to the parties made this deduction, appellant's share from the proceeds was $18,810 greater than one-half of the proceeds. Pursuant to the parties' agreement, appellant was entitled to reimbursement of the $3,300 he paid the receiver, which leaves $15,510. Appellant testified the expenses he paid to repair and maintain the house in its condition at the time of the divorce decree totaled $14,753.51. Appellee's share of this expense that appellant paid was $7,376.75. Thus, appellant effectively received reimbursement for the $3,300 he paid the receiver and for the $7,376.75 of appellee's share of the maintenance and repair expenses he paid, as well as an additional $8,133.25.

Concerning the mortgage payments, the decree provided that the parties were each responsible for paying one-half of the debt secured by the house, and the decree ordered the parties to each pay one-half of the principal, interest, taxes, and insurance on the house during

---

[3] It appears appellant may be arguing that, besides the $3,300 he paid the receiver, he was entitled to reimbursement for the $4,184.97 for expenses to prepare the house for sale paid out of the joint account and for the $2,195.07 in additional sale-preparation expenses he paid out of his own funds because of the parties' failure to fully fund the joint account. However, the decree did not provide for reimbursement for expenses paid out of the joint account, and the parties agreed they would not pursue claims related to their failure to fund the joint account. Accordingly, we conclude appellant was not entitled under the decree or under the parties' subsequent agreements to reimbursement for any expenses to prepare the house for sale other than the $3300 appellant paid the receiver.

[4] On September 14, 2012, in the order appointing a receiver, the trial court awarded appellee "attorney fees in the amount of $4,425 to bring this motion for appointment of receiver [to] be paid from the gross proceeds of the sale of the Property." At the hearing on November 6, 2012, the trial court stated it would strike the attorney's fee award from the previous order. However, the orders the court signed that day did not strike the award of attorney's fees. Instead, the order denying appellant's motion for reconsideration of the order appointing a receiver awarded appellee attorney's fees of $885 to be deducted from appellant's portion of the sale proceeds, and the order granting appellee's motion to enforce the property division awarded appellee attorney's fees of $3,500 to be deducted from appellant's portion of the sale proceeds, and that same order provided that the September 14, 2012 attorney's fees award of $4,425 was to be deducted from appellant's portion of the sale proceeds. Therefore, instead of striking the award of $4,425 attorney's fees on November 6, 2012, the trial court increased the award of attorney's fees to $8,810 and ordered that the attorney's-fees awards be deducted from appellant's portion of the sale proceeds. The order of March 15, 2013 setting out the amount of the checks to the parties ordered that the parties' "attorney fees request[s] are both hereby denied;" but it appears this order pertained to attorney's fees for the March 14, 2013 hearing requested by the parties in motions filed after November 6, 2012. Nothing in the record clearly indicates that the trial court intended to vacate its previous awards of attorney's fees to appellee.

the time to make pre-sale repairs and until closing. The decree also provided the parties could live in the house until the closing. Appellee stopped paying the principal, interest, and taxes after March 2009. Appellant testified that since then, he has paid $89,039.23 toward the principal, interest, and taxes on the house. Appellant argues that under the decree, appellee was responsible for paying half that amount, $44,519.62. The trial court stated in its November 6, 2012 order to enforce property division that:

> [Appellee] has fully satisfied her obligation to pay one-half of the mortgage through March 2009 with any continuing obligation under the Final Decree between April 2009 and the present to be fully offset by [appellant's] refusal to move out of the Property and sell the Property in compliance with the Final Decree . . . .

Appellant argues that the trial court's order relieving appellee of the obligation to pay her share of the mortgage constituted a modification of the property division in the decree prohibited by section 9.007(a). *See* FAM. § 9.007(a).

Liberally construing appellee's motion to enforce the divorce decree, appellee appears to assert that appellant breached the agreed decree by refusing to sell the house, and that appellant's breach forced her to continue to pay half the mortgage payments for over two years after she moved out. Instead of seeking payment of damages from appellant, appellee appears to seek only an offset in any amounts for principal, interest, taxes, and insurance she may owe appellant after she stopped paying after March 2009.

Appellant argues the agreed decree did not specify the time in which the property had to be sold. Therefore, appellant argues, his delay in selling the property did not violate the decree. However, when an agreement does not specify a time for performance, a reasonable time for performance is implied in the contract. *See Leon Ltd. v. Albuquerque Commons P'ship*, 862 S.W.2d 693, 701 (Tex. App.—El Paso 1993, no pet.) ("When no time for performance has been specified in the agreement, a reasonable time will be implied, considering the nature and purpose

of the agreement, as determined by the surrounding circumstances, the situation of the parties, and the subject matter of the agreement.").

Viewing the evidence in the light favorable to the judgment, the trial court could have determined appellant violated the decree by failing to make the repairs necessary to sell the house "as directly as the parties can make it happen" and by refusing to cooperate with appellee on preparing the house for sale and selling the house. The court could have determined that the division of property provided for in the decree contemplated a sale of the house within a reasonable period. The trial court could have concluded that requiring appellee to pay the interest on the principal and to pay the taxes and insurance on the property beyond the reasonable time to sell the house caused by appellant's refusal to agree to sell the house would have been contrary to the property division contemplated by the decree and that appellant should be responsible for the full amount of the interest, taxes, and insurance for the period beyond the reasonable time for the sale of the house.

However, the trial court's order on November 6, 2012 relieving appellee of the obligation to pay the principal after March 2009 was erroneous because those payments reduced the amount of the debt and increased the amount of the net sale proceeds that were to be divided equally between the parties. Appellant was injured by the amount of the principal he paid that should have been paid by appellee, and he is entitled to damages for that amount to the extent they are not offset by appellee's claim.

Likewise, if a reasonable time to sell the house was beyond March 2009, then the trial court erred by relieving appellee of her obligation to pay the interest, taxes, and insurance during the reasonable time to sell the house. Relieving appellee of her obligation to pay the principal at all and relieving her of her obligation to pay the interest, taxes, and insurance during the

–10–

reasonable time to sell the house constituted a modification of the property division prohibited by section 9.007(a).

Having found error, we must determine whether the error is reversible. Rule 44.1(a) provides that an error is not reversible unless it "probably caused the rendition of an improper judgment." TEX. R. APP. P. 44.1(a)(1). Appellant had the burden to establish that the error constituted reversible error. *See Meachum v. Comm'n for Lawyer Discipline*, 36 S.W.3d 612, 615 (Tex. App.—Dallas 2000, pet. denied) ("It is Meachum's burden to establish reversible error).

As discussed above, the order dividing the sale proceeds gave appellant $8,133.25 more than half of the sale proceeds before considering the mortgage payments. Appellant paid $12,909.05 of appellee's share of the principal after appellee quit paying in March 2009, which was $4,775.80 more than the $8,133.25. Therefore, if the amount of interest, taxes, and insurance appellee paid beyond the reasonable time for selling the house equaled or exceeded $4,775.80, then appellant was not harmed. However, if the amount of interest, taxes and insurance appellee paid beyond the reasonable time for selling the house was less than $4,775.80, then appellant was harmed.

Appellee testified she paid $31,800 for the "mortgage payments" from January 2007 when she moved out of the house to March 2009 when she stopped paying. That is approximately $1,177.78 per month for twenty-seven months. Although the evidence does not show the allocation of the payments between principal, interest, taxes, and insurance, appellant testified he paid $89,039.23 in principal, interest, taxes, and insurance from April 2009 until the house was sold and reduced the principal by $25,808.09 during that time. Thus, the principal payment was approximately twenty-nine percent of the total payment of principal, interest, taxes, and insurance. Therefore, appellee's monthly payments of $1,177.78 from January 2007 to

March 2009 were approximately $341.56 toward principal and $836.22 toward interest, taxes, and insurance.  Thus, after she moved out, appellee paid approximately $9,222 toward the principal and $22,578 toward interest, taxes, and insurance.

$22,578 minus the $4,775.80 discussed above equals $17,802.20.  If the number of months constituting a reasonable time to sell the property after appellee moved out multiplied by $836.22 (the amount of appellee's monthly payment toward interest, taxes, and insurance) exceeded $17,802.20, then appellant was harmed by the trial court's ruling.  However, if the reasonable number of months for selling the house multiplied by $836.22 was less than or equaled $17,802.20, then appellant suffered no harm from the trial court's order relieving appellee of any obligation toward payment of the principal, interest, taxes, and insurance after March 2009.

$17,802.20 divided by $836.22 equals just over 21.  Therefore, if the trial court could have determined that the house reasonably should have been sold in twenty-one months or less after appellee moved out in January 2007, then appellant suffered no harm from the trial court's order.  Appellee testified that appellant told her when she moved out that he would have the property for sale in six months. Subtracting those six months from the twenty-one months leaves fifteen months for selling the house after it was listed for sale.  The trial court could have reasonably concluded the house should have been sold within fifteen months after being listed for sale.  Accordingly, we conclude appellant was not harmed by the trial court's order.

We overrule appellant's sole issue on appeal.

## CONCLUSION

We affirm the trial court's judgment.

/ Lana Myers/
LANA MYERS
JUSTICE

130501F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

JOSEPH REGECI, Appellant

No. 05-13-00501-CV          V.

CAROL REGECI, Appellee

On Appeal from the 401st Judicial District
Court, Collin County, Texas
Trial Court Cause No. 401-50134-06.
Opinion delivered by Justice Myers.
Justices Lang-Miers and Lewis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee CAROL REGECI recover her costs of this appeal from appellant JOSEPH REGECI.


Judgment entered this 16th day of June, 2014.


/Lana Myers/

LANA MYERS
JUSTICE

–14–