# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00457-CV

**Thomas A. Dyke, Appellant**

**v.**

**David Reed Hall, Individually and in his capacity as
Trustee of the David Reed Hall Trust No. 1, Appellee**

FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-GN-18-000830, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal from the denial of relief under the Texas Citizens Participation Act (the "TCPA"). *See* Tex. Civ. Prac. & Rem. Code §§ 27.001-.011.[1] David Reed Hall sought declaratory relief regarding an agreement that he entered into with Thomas A. Dyke. In response, Dyke filed various counterclaims against Hall. Hall then filed an amended petition adding new requests for declaratory relief and a claim for breach of fiduciary duty. Dyke filed a motion to dismiss Hall's new claims under the TCPA. The district court denied the motion to dismiss. Dyke appeals the district court's ruling. *See id.* § 51.014(a)(12). We will affirm the district court's order denying Dyke's motion to dismiss.

---

[1] Recently, the legislature amended certain provisions of the TCPA, but the amendments do not apply to this case. *See* Act of May 17, 2019, 86th Leg., R.S., H.B. 2730, §§ 1-12 (to be codified as amendments to Tex. Civ. Prac. & Rem. Code §§ 27.001-.010). Accordingly, all citations to the TCPA in this opinion are to the version in effect in 2018.

# BACKGROUND[2]

Dyke and Hall have had a business relationship for years. When Hall's mother died, oil and gas interests that she owned were transferred into the David Reed Hall Trust No. 1 (the "Trust") per the terms of her will, and Hall was named as the sole beneficiary and trustee. After Hall became the beneficiary of the Trust, Dyke drafted an agreement entitled Management Agreement (the "Agreement") pertaining to the property in the Trust, and Hall signed the Agreement. Under the terms of the Agreement, Dyke would "manage all of the Trust's and Hall's Mineral Interests and Property" for fifteen years "unless [the Agreement was] extended or terminated by written agreement executed by all of the Parties," and Dyke would be paid eight percent "of all income and payments of any kind received by the Trust and/or Hall for the leasing of Mineral Interests and all other Property including, but not limited to, lease bonus payments, royalties, proceeds of sale, [and] dispute resolutions." Further, the Agreement stated that Dyke's duties included "the screening and selection of appropriate legal counsel whenever needed as well as the management of said legal counsel," that some of Hall's family members were contesting royalty payments being made to Hall, and that Dyke had "arranged for appropriate legal counsel for Hall and the Trust to use in potential litigation with the Family Members."

A few years after the parties entered into the Agreement, Hall settled a property dispute with members of his family. Under the terms of the settlement agreement, the Trust

---

[2] The following summary comes from the pleadings filed in this case as well as various exhibits attached to those pleadings. *See* Tex. Civ. Prac. & Rem. Code § 27.006(a) (requiring courts to consider pleadings when determining whether claims should be dismissed); *see also Spencer v. Overpeck*, No. 04-16-00565-CV, 2017 WL 993093, at *1 (Tex. App.—San Antonio Mar. 15, 2017, pet. denied) (mem. op.) (explaining that because reviewing courts "are required to consider the pleadings and evidence in the light most favorable to Overpeck, the following summarizes facts from Overpeck's pleadings").

was given, among other things, a payment of $1,175,000. After the settlement agreement was reached, Hall offered to pay Dyke $51,832.53. When deciding what amount was owed to Dyke under the Agreement, Hall reasoned that Dyke was entitled to eight percent of the net settlement amount. Dyke disagreed and contended that he was entitled to eight percent of the gross settlement amount. While the parties were disagreeing over the amount owed, Hall communicated to Dyke that he wanted to terminate the Agreement, but Dyke indicated that he wanted the Agreement to continue.

Following this exchange, Hall filed a declaratory-judgment action seeking clarification as to what payments Dyke is entitled under the Agreement, what types of payments "require a remittance of eight percent," and whether the eight percent is "calculated against the gross amount received by the Trust or the net amount." Further, Hall sought declarations that Dyke is not entitled to any payment under the Agreement unless Dyke is actively managing and leasing the property, that the Agreement is "terminable by any party," that Hall is entitled to "a return" of royalty payments made to Dyke because Dyke "did nothing to manage" the property interests, and that Hall is not in breach of the Agreement.

In response, Dyke brought several counterclaims against Hall for breach of contract and fraud. In addition, Dyke filed a motion for summary judgment arguing that the Agreement unambiguously specifies that he is entitled to any and all income received by the Trust or Hall. Dyke attached to his motion a sworn "declaration" setting out his recollection of the events and negotiations that led up to the execution of the Agreement; discussing actions that he took for the Trust, including his involvement in legal matters; specifying that he met with Hall and several attorneys regarding the Trust and pending legal matters; and stating that he provided advice to Hall. More specifically, Dyke stated as follows:

3

4. . . . [Hall] began discussions with me about a contract to have me manage [Hall's] mineral interests as well as legal issues that Hall and the trust were facing.

. . .

5. [The scope of my role under the Agreement included] screening, selecting and managing legal counsel employed to protect Hall's ownership and inheritance interests, . . . reviewing all documents produced by all sides, be[ing] notified and/or copied on all information exchanges, be[ing] consulted on all tactical considerations, contribut[ing] to all decisions and consult[ing] with Hall on demand.

8. . . . I helped manage[] Hall's litigation and other legal issues and managed the mineral interests for the trust. In return, Hall paid me 8% of all income and payments made to the trust for several years.

9. In addition, I remained heavily involved in the development of the legal matters, including exchanging drafts of agreements, researching legal causes of action and possible recovery as well as mineral interests, and counseling on the interpretation of documents and agreements. . . . I also frequently met with Hall and exchanged emails and text messages to discuss the legal issues.

10. During this period, Hall and I continued to meet two, three, and often many more time[s] per month, sometimes with attorneys, to discuss Hall's legal issues and/or the trusts mineral interests. Throughout this time, I continued to counsel and advise Hall related to these actions and perform other actions in accordance with the Contract.

Dyke incorporated similar statements into his motion for summary judgment and original answer.

After Dyke filed his motion for summary judgment, Hall filed an amended petition in which he described his relationship with Dyke as an attorney-client relationship that existed before they entered into the Agreement and further characterized the Agreement as "a fee agreement between an attorney, Dyke, and his client," Hall. As support for this characterization, Hall referred to portions of Dyke's declaration discussing his involvement in and management of legal issues pertaining to the Trust. Further, Hall argued that the amount of money paid to Dyke for the work that Dyke performed "is unconscionable" and "is not fair and reasonable to the client." Additionally, Hall contended that he has the right to terminate the Agreement at any time

4

because the Agreement is "an attorney-client agreement." Moreover, Hall requested declarations

similar to the ones listed in his first petition and sought the following additional declarations:

> c. The termination provision of the Management Agreement is unconscionable.[3]
>
> d. The Management Agreement is an agreement between an attorney, Dyke, and his client and the client may terminate the agreement at any time with or without cause;
>
> e. The Management Agreement is a contingent fee agreement between an attorney and his client;
>
> f. The Management Agreement is a contingent fee agreement that fails to meet the requirements for a contingent fee agreement;
>
> . . .
>
> j. The Management Agreement is a prohibited transaction under the Disciplinary Rules and is therefore voidable; [and]
>
> k. Attorney Dyke should be disgorged of any fee deemed to be unconscionable, or otherwise not fair and equitable to the client[.]

Additionally, Hall added new claims for breach of fiduciary duty based on Dyke's

status as an attorney. In particular, Hall asserted as follows:

> 50. Attorney Dyke breached his fiduciary duty by creating a one-sided unconscionable contract, by creating a contract with his client that purportedly could not be terminated, by creating a contract that compensated him for no services, and by failing to disclose that the contract was not fair and equitable to Plaintiff.
>
> 51. Attorney Dyke also failed to advise his client that the agreement between Plaintiff and attorney Dyke could be terminated by Plaintiff at any time with or without cause.

---

[3] On appeal, Hall asserts that the declaration regarding whether the Agreement is unconscionable is not a new claim or a newly requested declaration because he requested a similar declaration in his original petition. For purposes of resolving this appeal, we will assume that this requested declaration is a new one.

5

52. Attorney Dyke failed to advise Plaintiff that the interest being acquired by attorney Dyke was not fair and reasonable and fully disclosed in a manner that could be reasonably understood by the client.

53. Attorney Dyke failed to disclose that the fee under the contract was unconscionable.

54. Attorney Dyke did not advise the client to seek independent legal counsel.

Further, Hall asserted that because Dyke breached his fiduciary duty, he "should be disgorged of all fees paid" by Hall to Dyke. A few weeks after filing his amended petition, Hall filed a motion for summary judgment asserting that he was entitled to judgment as a matter of law on his declaratory claims that the Agreement is an agreement between an attorney and his client, that Hall may terminate the Agreement at any time, and that the Agreement is a prohibited business transaction between an attorney and his client.

Shortly after Hall filed his amended petition, Dyke filed a motion to dismiss Hall's new claims under the TCPA. *See* Tex. Civ. Prac. & Rem. Code §§ 27.001-.011. In his motion, Dyke asserted that Hall's new claims were subject to dismissal because they were made "in direct response to [Dyke]'s declaration submitted in his case and based on [Dyke]'s participation in the judicial process and on his exercise of his right to free speech."

In his response to the motion to dismiss, Hall asserted that the district court should deny the motion because the TCPA does not apply to the new claims in his amended petition. Alternatively, Hall argued that the district court should deny the motion because the requirements for dismissal under the TCPA had not been met. Hall also attached his own affidavit as an exhibit, in which he stated that Dyke is an attorney and presented himself as Hall's attorney to others, that Dyke provided legal advice and performed legal research on Hall's behalf before they entered into the Agreement, that Dyke prepared the Agreement, that Dyke did

6

not advise him to have an attorney review the Agreement before signing, and that after they signed the Agreement, Dyke continued to communicate with Hall's attorneys regarding legal strategy, performed legal research, discussed potential claims, and reviewed legal documents on Hall's behalf.

After considering the parties' arguments and convening a hearing on the motion, the district court denied Dyke's motion to dismiss. In its order, the district court determined that the Act applied to "the newly added causes of action" in Hall's amended petition but that the requirements for dismissal had not been met.

Dyke appeals the district court's order denying his motion to dismiss.

## GOVERNING LAW

The TCPA is designed to protect citizens who petition or speak on matters of public concern from retaliatory lawsuits seeking to intimidate or silence them. *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding); *see* Tex. Civ. Prac. & Rem. Code §§ 27.001-.011. The TCPA's "purpose is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits." *Lipsky*, 460 S.W.3d at 589; *see* Tex. Civ. Prac. & Rem. Code § 27.002 ("The purpose of this chapter is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury"). To effect that purpose, the TCPA provides a mechanism for dismissing the types of lawsuits listed above. *See Long Canyon Phase II & III Homeowners Ass'n v. Cashion*, 517 S.W.3d 212, 216 (Tex.

App.—Austin 2017, no pet.). The TCPA is "construed liberally to effectuate its purpose and intent fully." Tex. Civ. Prac. & Rem. Code § 27.011(b).

A party moving to dismiss a lawsuit under the TCPA must "show[] by a preponderance of the evidence that the [nonmovant's] legal action is based on, relates to, or is in response to the [movant]'s exercise of (1) the right of free speech; (2) the right to petition; or (3) the right of association." *Id.* § 27.005(b). If the movant meets his initial burden, the burden then shifts to the nonmovant to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). "The words 'clear' and 'specific' in the context of this statute have been interpreted respectively to mean, for the former, 'unambiguous,' 'sure,' or 'free from doubt' and, for the latter, 'explicit' or 'relating to a particular named thing.'" *Lipsky*, 460 S.W.3d at 590 (quoting *KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682, 689 (Tex. App.—Houston [1st Dist.] 2013, pet. denied)). In this context, "the term 'clear and specific evidence' refers to the quality of evidence required to establish a prima facie case, while the term 'prima facie case' refers to the amount of evidence required to satisfy the nonmovant's minimal factual burden." *Serafine v. Blunt*, 466 S.W.3d 352, 358 (Tex. App.—Austin 2015, no pet.). "Prima facie evidence is evidence that, until its effect is overcome by other evidence, will suffice as proof of a fact in issue. In other words, a prima facie case is one that will entitle a party to recover if no evidence to the contrary is offered by the opposite party." *Id.* (quoting *Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 726 (Tex. App.—Houston [14th Dist.] 2013, pet. denied), *disapproved on other grounds by Lipsky*, 460 S.W.3d at 586-91). Stated differently, "[a] prima facie case is the minimum quantum of evidence necessary to support a rational inference that the allegation is true." *Tyler v. Pridgeon*, 570 S.W.3d 392, 399 (Tex. App.—Tyler 2019, no pet.). "Conclusory statements are not probative and accordingly

8

will not suffice to establish a prima facie case." *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 355 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Even if the nonmovant has made a prima facie case, the trial court must still "dismiss a legal action against the moving party if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nomovant's claim." Tex. Civ. Prac. & Rem. Code § 27.005(d).

"In determining whether a legal action should be dismissed . . . , the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a); *see also Perez v. Quintanilla*, No. 13-17-00143-CV, 2018 WL 6219627, at *2 (Tex. App.—Corpus Christi Nov. 29, 2018, no pet.) (mem. op.) (stating that under TCPA trial courts "may consider pleadings as evidence"). Appellate courts "review de novo whether each party carried its assigned burden," *Cashion*, 517 S.W.3d at 217, and "review de novo the denial of a TCPA motion to dismiss," *Dolcefino v. Cypress Creek EMS*, 540 S.W.3d 194, 199 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

**DISCUSSION**

On appeal, Dyke generally contends that the district court erred by failing to dismiss Hall's claims under the TCPA. In his first issue, Dyke asserts that the district court erred by concluding that Hall presented a prima facie case for each essential element of his claims. In his second issue, Dyke argues that even if Hall presented a prima facie case, Dyke established a defense to those claims by a preponderance of the evidence, and the district court should have dismissed Hall's new claims. In his third issue, Dyke asserts that the district court erred by failing to award him attorney's fees and costs and impose sanctions under the TCPA. As an

9

alternative basis for upholding the district court's ruling, Hall contends in his appellee's brief that the TCPA does not apply to his new claims and, therefore, that the district court did not err by denying Dyke's motion to dismiss.

**Whether the TCPA Applies**

In his appellant's brief, Dyke argues that the district court correctly determined that the TCPA applied to Hall's new claims. In response, Hall asserts in his appellee's brief that the TCPA does not apply to his new claims. Given our ultimate conclusion that the district court did not err when it denied Dyke's motion to dismiss because Hall met his burden of establishing a prima facie case for his new claims and because Dyke failed to meet his burden of establishing a valid defense, *see* Tex. Civ. Prac. & Rem. Code § 27.005(c-d), we need not decide whether the TCPA applies and will instead assume that it applies to the claims at issue in this case, *see Cosmopolitan Condo. Owners Ass'n v. Class A Inv'rs Post Oak, LP*, No. 01-16-00769-CV, 2017 WL 1520448, at *4 (Tex. App.—Houston [1st Dist.] Apr. 27, 2017, pet. denied) (mem. op.) (assuming that TCPA applied for purpose of determining whether trial court erred by denying motion to dismiss).

**Prima Facie Case**

In his first issue on appeal, Dyke contends that the district court erred by not granting his motion to dismiss because Hall failed to meet his burden of establishing "a prima facie case for each essential element of his" requested declarations and his breach-of-fiduciary-duty claims. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c).

10

*Declaratory Judgment Claims*

Under the UDJA, "[a] person interested under a . . . written contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations thereunder." *Id.* § 37.004(a). "A declaratory judgment is appropriate when a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought." *Dolcefino*, 540 S.W.3d at 201. "A justiciable controversy is one in which a real and substantial controversy exists involving a genuine conflict of tangible interest and not merely a theoretical dispute." *Tyler*, 570 S.W.3d at 399. Accordingly, to avoid dismissal, Hall was required to establish a prima facie case showing that there is a justiciable controversy between Dyke and him and that the controversy will be resolved by the declarations sought.

As discussed above, Dyke asserted in his motion to dismiss under the TCPA and in other filings in this case that the Agreement is an unambiguous contract between the parties requiring Hall to pay eight percent of all income that he or the Trust received as compensation for Dyke's management services both in the past and in the future and that Hall failed to comply with the payment provision. Further, Dyke argued that the term of the Agreement is fifteen years and that any early termination of the contract had to be agreed to by both parties in writing.

On appeal, Dyke highlights various portions of the Agreement and argues that the terms of the Agreement reveal that the Agreement is, consistent with its title, an agreement to allow Dyke to manage Hall's various property interests. Further, Dyke asserts that the Agreement does not state that he would be acting as Hall's attorney and that although he is required to manage and select legal counsel on Hall's behalf, he is not required to provide any legal services. As support for his assertions, Dyke highlights portions of his sworn declaration; of an affidavit

11

from Joe Osborn, who was aware of the relationship between Dyke and Hall; and of a letter written by Hall to Dyke that Dyke urges indicates that the Agreement is a business arrangement and not an attorney-client agreement. Further, Dyke contends that Hall failed to establish that Dyke was representing Hall when they negotiated the terms of the Agreement and failed to show that the Agreement is an attorney-client agreement, an attorney-fee agreement, an improper contingency-fee agreement, a prohibited agreement under the Disciplinary Rules, or unduly burdensome or unconscionable. Moreover, Dyke argues that in Hall's response to the motion to dismiss, Hall failed to connect any evidence to the elements of his declaratory claims and, therefore, did not establish the essential elements of his requested declarations.[4]

In contrast, Hall argues on appeal that there are justiciable controversies between the parties as described in his response to the motion to dismiss and that the declarations sought will resolve the controversies. Hall asserted in his response that the Agreement is not a simple contractual agreement between Dyke and him as Dyke urged and is instead either an attorney-client agreement between Dyke and him or an impermissible business agreement between an attorney and his client. Further, Hall argued that he could terminate the Agreement without complying with the requirements listed in the Agreement. In his response, Hall directly

---

[4] In his appellant's brief, Dyke provides a detailed summary of the evidence presented in the various pleadings that he contends supports his characterization of the Agreement and argues in light of that evidence that Hall "cannot prove the requested declarations." However, in resolving this interlocutory appeal, we are not tasked with determining which party will ultimately prevail on these issues and instead must simply decide whether Hall established a prima facie case in order to prevent his claims from being dismissed under the TCPA. *Cf. Cosmopolitan Condo. Owners Ass'n v. Class A Inv'rs Post Oak, LP*, No. 01-16-00769-CV, 2017 WL 1520448, at \*5 (Tex. App.—Houston [1st Dist.] Apr. 27, 2017, pet. denied) (mem. op.) (explaining that courts "are required to view the evidence in the light most favorable to the" nonmovant).

12

incorporated the arguments from his previously filed motion for summary judgment as well as the supporting exhibits attached to that motion.[5]

As support for his contentions, Hall referenced the affidavit that he prepared in this dispute, in which he specified that Dyke was an attorney, that Dyke presented himself as Hall's attorney to others, that Dyke provided legal services to Hall before and after they entered into the Agreement, that Dyke drafted the Agreement, that Dyke never advised Hall to have an attorney review the Agreement before signing it, and that Dyke demanded eight percent of the funds awarded to Hall under a settlement agreement regarding a legal dispute with his family.

In addition, Hall referred to statements made in Dyke's pleadings and in his sworn declaration, including Dyke's assertions that they entered into the Agreement to allow him to manage the legal dispute that Hall was having with his family, that Dyke agreed to manage the legal issues pertaining to ownership of the mineral interests, that he assisted with Hall's legal issues, that he regularly met with Hall to discuss those issues, and that his responsibilities included screening, selecting, and managing legal counsel, reviewing all documents produced in legal disputes, consulting with Hall on demand regarding tactical decisions, and researching legal causes of action related to Hall's interests.

---

[5] In his brief, Dyke contends that although Hall referred to his motion for summary judgment when responding to the motion to dismiss, Hall did not refer to any specific exhibits or other evidence to support his contentions in his response and instead referred only to the argument portion of the motion for summary judgment. Accordingly, Dyke urges that Hall failed to meet his burden of making a prima facie case for each element of his claim. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c). However, as discussed above, Hall directly incorporated into his response all of the evidence submitted with his motion for summary judgment, and we have been unable to find support for the proposition that a response to a motion to dismiss filed under the TCPA cannot effectively incorporate by reference the exhibits attached to a previously filed motion for summary judgment. *Cf. Vaughn v. Burroughs Corp.*, 705 S.W.2d 246, 248 (Tex. App.—Houston [14th Dist.] 1986, no writ) (observing that parties may incorporate by reference evidence previously attached to summary-judgment motion).

13

Next, Hall highlighted various portions of the Agreement and noted that the Agreement referenced the dispute between him and members of his family over property interests, the potential for litigation, Dyke's responsibility to assist in retaining counsel if litigation occurred, and Dyke's obligation to select and manage legal counsel. Additionally, Hall pointed to the portion of the Agreement specifying that Dyke was entitled to eight percent of the income received by Hall or the Trust, including money acquired from dispute resolutions.

When moving for summary judgment, Hall attached exhibits to his motion as support for his requested relief. Several of the exhibits were emails written by Dyke both before and after the Agreement was executed in which he communicated to various individuals that he was Hall's attorney. Another exhibit was a letter written by Dyke to Hall after the underlying litigation started in which Dyke detailed some of the advice that he had given Hall over the years, including advising Hall that the language of an estate document pertaining to Hall's family members included Hall as a beneficiary, that Hall should fight for his share of that inheritance, and that Hall should send a demand letter to a company regarding royalty payments. Hall also attached other communications by Dyke regarding various lawsuits in which Dyke related that he advised Hall to commence "a limited . . . discovery" for certain documents relating to Hall's claims, went over the terms of proposed settlement agreements, recommended that the language of those agreements and Hall's pleadings be changed, sent a demand letter on behalf of Hall, advised Hall's lawyers about strategy, performed legal research to see what types of claims Hall might have, and sent case-law research to Hall's lawyers. The last exhibit was a letter written by Dyke concerning the Agreement in which he stated that he agreed to be Hall's "legal consultant," agreed to act in his "capacity of attorney in dealings with [Hall's] family," drafted the Agreement in which Hall would receive "the benefit of [his] background in law both as a practicing attorney

14

and one who managed litigation," reminded Hall that he had claims against various oil companies, reviewed documents on Hall's behalf, advised Hall to accept certain offers, and negotiated a deal for Hall. *See Vinson & Elkins v. Moran*, 946 S.W.2d 381, 405 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.) (explaining that "an attorney-client relationship may be established expressly or impliedly from the conduct of the parties" and that courts should employ "objective standards of what the parties said and did" when deciding if relationship existed).

Based on the preceding, Hall argued that he was not required to comply with the termination provision of the Agreement to end the Agreement because he and Dyke had an attorney-client relationship; because "[p]ublic policy strongly favors a client's freedom to employ a lawyer of his choosing and, except in some instances where counsel is appointed, to discharge the lawyer during the representation for any reason or no reason at all"; and because undue burdens placed on the ability of a client to terminate his counsel "violate[] public policy and [are] unconscionable as a matter of law." *See Hoover Slovacek, LLP v. Walton*, 206 S.W.3d 557, 562, 563 (Tex. 2006); *see also* Tex. Disciplinary R. Prof'l Conduct 1.02 cmt. 5 (providing that "the client may not be asked to agree . . . to surrender the right to terminate the lawyer's services"), 1.15 (specifying that "lawyer shall . . . withdraw . . . from the representation of a client[] if . . . the lawyer is discharged, with or without good cause"), cmt. 4 (explaining that client has power to discharge lawyer at any time, with or without cause). As an alternative basis for attacking the validity of the termination provision, Hall urged that the provision is unconscionable because it forces the parties to comply with the terms of the Agreement for fifteen years unless *both* parties agree otherwise in writing.

Additionally, Hall argued that the Agreement was a contingency-fee agreement between an attorney and his client because it required him to pay Dyke a percentage of any

awards received through the resolution of legal disputes. However, Hall also argued that the Agreement did not fully comply with the requirements for a contingency-fee agreement because it did not list the litigation and other expenses that will be deducted from the amount of income received. *See* Tex. Disciplinary R. Prof'l Conduct 1.04(d) (setting out requirements for contingency-fee agreements).

Finally, Hall argued that even if the Agreement is not an attorney-client agreement, the evidence summarized above establishes that it is an agreement between an attorney and his client executed after their attorney-client relationship began. Accordingly, Hall argued that the Agreement is subject to close scrutiny, that the Agreement is presumptively unfair and invalid, and that Dyke has the burden of establishing that the Agreement is reasonable and fair. *See Keck, Mahin & Cate v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 699 (Tex. 2000). Relatedly, Hall contended that the Agreement did not comply with Disciplinary Rule 1.08, which states that a lawyer must not enter into a business agreement with a client unless, among other requirements, "the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction." *See* Tex. Disciplinary R. Prof'l Conduct 1.08.

In light of the preceding, we must conclude that Hall has satisfied his burden of establishing a prima facie case that there are justiciable controversies regarding the nature of the Agreement, regarding its validity, regarding the manner in which it may be terminated, and regarding Hall's obligation to pay eight percent of any income that he or the Trust collected or will collect in the future. *Cf. Tyler*, 570 S.W.3d at 400 (noting that parties presented differing interpretations of governing statute and concluding that "[a] justiciable controversy exists as to the rights and status of the parties with respect to the . . . statute"); *Perez*, 2018 WL 6219627, at *4 (determining that party met burden of showing that there is justiciable controversy between

16

parties where evidence established that there was dispute "as to the rights and status of the parties with respect to the" contract "and whether the activities of appellants fall within that agreement"); *Class A Inv'rs Post Oak, LP*, 2017 WL 1520448, at *6 (concluding that evidence viewed in favor of nonmovant was "sufficient to support a rational inference that a justiciable controversy about the enforceability and scope of the Agreement exists").

Turning to whether the controversy will be resolved by the requested declarations, we note that Hall sought in his second amended petition declarations that the termination provision of the Agreement is unconscionable, that the Agreement is an attorney-client agreement that may be terminated at any time, that the Agreement is a contingency-fee agreement, that the Agreement is a contingency-fee agreement but fails to meet the requirements for that type of agreement, and that Dyke should be disgorged of any fee deemed unconscionable. Those requested declarations would resolve the controversies regarding the nature of the Agreement, regarding its validity, regarding whether the termination provision must be complied with before Hall could end the Agreement, and regarding whether Hall had been obligated and continues to be obligated to pay a percentage of his or the Trust's income to Dyke. *See Walton*, 206 S.W.3d at 562, 563; Tex. Disciplinary R. Prof'l Conduct 1.02 cmt. 5.

Regarding Hall's alternative declaration that the Agreement is voidable because it is the type of business relationship between an attorney and a client that is not permitted under the Disciplinary Rules, we note that violations of the Rules do not give rise to a private cause of action. *See* Tex. Disciplinary Rules Prof'l Conduct preamble para. 15. However, as will be discussed more thoroughly in the portion of the opinion addressing Dyke's second appellate issue, courts have relied on the Rules when determining whether a contract between an attorney and his client is enforceable. *See Cruse v. O'Quinn*, 273 S.W.3d 766, 775 (Tex. App.—Houston

17

[14th Dist.] 2008, pet. denied). Accordingly, Hall's requested declaration would resolve the disputes regarding the Agreement's validity, regarding whether Hall is obligated to continue paying Dyke under the terms of the Agreement, and regarding whether the termination provision must be complied with.[6]

For these reasons, we conclude that Hall met his burden of proving a prima facie case establishing that the declarations that he requested would resolve the justiciable controversies listed above. *Cf. Tyler*, 570 S.W.3d at 401 (explaining that "[a] determination of the correct interpretation and application of the . . . statute will resolve the parties' dispute about how to determine the amount owed" and will inform party "if she is responsible for the full amount of the bill"); *Perez*, 2018 WL 6219627, at *4 (concluding that party "met his burden of adducing clear and specific evidence that the controversy would be resolved by the declarations sought" where party requested "that the trial court determine the enforceability and scope of the" contract "through the declarations sought"); *Class A Inv'rs Post Oak, LP*, 2017 WL 1520448, at *6 (deciding that nonmovant established prima facie case for second element because "[t]he declarations sought by the Developer are directed at" "the enforceability and scope of the Agreement").

---

[6] Dyke argues that the declarations requesting that he be disgorged of any collected fee deemed to be unconscionable and that the Agreement be deemed a voidable and prohibited transaction will not resolve any controversy. Regarding the first request for declaratory relief, Dyke asserts that "the requested declaration would simply spawn additional questions as to whether any fees were unconscionable or otherwise fair and equitable." Regarding the second request, Dyke contends that the relief requested would not invalidate the Agreement. *Cf. Love Terminal Partners v. City of Dallas*, 256 S.W.3d 893, 897 (Tex. App.—Dallas 2008, no pet.) (stating that if "conduct is merely voidable, the act is valid until adjudicated and declared void"). Although Dyke notes that the first requested declaration does not seek clarification regarding which actual fees were unconscionable and that the second one does not specifically seek to void the Agreement, the fact that the entirety of the legal dispute between the parties would not be resolved by the declarations without additional actions does not preclude a conclusion that the requested declarations do resolve justiciable controversies between the parties.

18

*Breach of Fiduciary Duty Claim*

"In addition to the duty of ordinary care, an attorney owes fiduciary duties to his client as a matter of law." *Beck v. Law Offices of Edwin J. (Ted.) Terry, Jr., P.C.*, 284 S.W.3d 416, 428-29 (Tex. App.—Austin 2009, no pet.); *see also Goffney v. Rabson*, 56 S.W.3d 186, 193 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (noting that attorney-client relationship is relationship of good faith "requiring absolute perfect candor, openness and honesty, and the absence of any concealment or deception"). As such, attorneys are required to "render a full and fair disclosure of facts material to the client's representation." *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988). "To prevail on a breach-of-fiduciary-duty claim, a plaintiff must prove (1) the existence of the fiduciary relationship; (2) a breach of that duty by the attorney defendant; (3) that causes; and (4) damages to the plaintiff." *Beck*, 284 S.W.3d at 429.

On appeal, Dyke argues that Hall failed to meet his burden of presenting a prima facie case for each of the elements for his breach-of-fiduciary-duty claim. When challenging the district court's ruling, Dyke contends that "Hall provided no evidence that a fiduciary duty existed between" them. Regarding his alleged breach of that duty, Dyke argues that Hall simply provided a conclusory assertion without any accompanying evidence that Dyke failed to advise Hall to have an attorney review the Agreement before signing it. Relatedly, Dyke asserts that even if it were true that he failed to provide this advice, "the failure to advise an arms-length party to have an independent attorney review a contract does not establish a breach of fiduciary duty." Turning to any alleged damages, Dyke contends that Hall "failed to show that he suffered any damages caused by any alleged breach" and instead simply asserted without any accompanying evidence that he paid Dyke under the terms of the Agreement. *Cf. Bedford v. Spassoff*, 520 S.W.3d 901, 906 (Tex. 2017) (explaining in defamation case that general

19

"'averments of direct economic losses and lost profits' do not satisfy the Act's clear-and-specific-evidence standard without 'specific facts illustrating how [a defendant's] alleged remarks about [a plaintiff's] activities actually caused such losses'" (quoting *Lipsky*, 460 S.W.3d at 592-93)); *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 882-83 (Tex. App.—Austin 2018, pet. filed) (concluding that plaintiffs' pleadings failed "to provide the element-by-element, claim-by-claim factual specificity required by the Act with regard to damages" when generally stating that they have sustained damages in amount that will be proven at trial).

As set out earlier, Hall presented evidence suggesting that Hall and Dyke had an attorney-client relationship before, during, and after the execution of the Agreement. Attorneys owe fiduciary duties to their clients as a matter of law. *Schlein v. Griffin*, No. 01-14-00799-CV, 2016 WL 1456193, at *13 (Tex. App.—Houston [1st Dist.] Apr. 12, 2016, pet. denied) (mem. op.); *Beck*, 284 S.W.3d at 428-29. Accordingly, we conclude that Hall met his burden of establishing a prima facie case regarding the existence of a fiduciary relationship for his breach-of-fiduciary-duty claim.

Turning to the second element, generally speaking, "the burden of proving that an attorney breached his fiduciary duties rests on the party asserting the claim." *Schlein*, 2016 WL 1456193, at *13. "However, Texas courts apply a presumption of unfairness to transactions between a fiduciary and a party to whom he owes a duty of disclosure," *id.* at *14, and attorneys owe a duty of disclosure to their clients, *Patrick v. Howard*, 904 S.W.2d 941, 945 (Tex. App.—Austin 1995, no writ); *see Willis*, 760 S.W.2d at 645. "Contracts between attorneys and their clients negotiated during the existence of the attorney-client relationship are closely scrutinized. Because the relationship is fiduciary in nature, there is a presumption of unfairness or invalidity attaching to such contracts." *National Union Fire Ins. Co.*, 20 S.W.3d at 699

20

(internal citation omitted); *see also Gammon v. Hodes*, No. 03-13-00124-CV, 2015 WL 1882274, at *5 (Tex. App.—Austin Apr. 24, 2015, pet. denied) (mem. op.) (observing that there is presumption of unfairness or invalidity of contract "[w]hen an attorney enters into a contract with his or her client for compensation during an already existing attorney-client relationship"). "Thus, in cases involving such transactions, the profiting fiduciary bears the burden of showing the fairness of the transactions." *Schlein*, 2016 WL 1456193, at *14. Moreover, the supreme court has explained that a presumption can, on its own, alleviate a party of the obligation to establish a prima facie case for an element of a claim. *Cf. Lipsky*, 460 S.W.3d at 596 (concluding that proof of damages "was not needed to defeat Lipsky's dismissal motion" under TCPA because damages are presumed in claim for "defamation per se"); *see also Camp v. Patterson*, No. 03-16-00733-CV, 2017 WL 3378904, at *7 (Tex. App.—Austin Aug. 3, 2017, no pet.) (mem. op.) (determining that presumption of falsity in defamation applied and, therefore, that party did not have to establish prima facie case for element of falsity). Moreover, Hall invoked the presumption of unfairness in his second amended petition. *See Judwin Props., Inc. v. Griggs & Harrison*, 911 S.W.2d 498, 506 (Tex. App.—Houston [1st Dist.] 1995, no writ) (noting that "the presumption of unfairness will not arise" "[u]nless the client raises the issue").

In light of the evidence summarized above suggesting that there was an attorney-client relationship prior to the execution of the Agreement and in light of the presumption of unfairness that attaches to transactions between an attorney and a client after the establishment of an attorney-client relationship, we conclude that Hall was not required to produce evidence to establish a prima facie case for the breach element of his breach-of-fiduciary-duty claim.

Regarding the causation and damages elements, Hall requested as relief in his second amended petition that Dyke "be disgorged of all fees paid by" Hall "to attorney Dyke."

21

"[F]ee forfeiture is an equitable remedy, the central purpose of which is not to compensate the client, but 'to protect relationships of trust from an agent's disloyalty or other misconduct.'" *Gammon*, 2015 WL 1882274, at \*3 (quoting *Burrow v. Arce*, 997 S.W.2d 229, 240 (Tex. 1999)). Accordingly, "a trial court may impose fee forfeiture based on a claim of breach of fiduciary duty regardless of whether the client proves that he sustained actual damages as a result of the breach." *Id.*; *see also Wheeler v. Sajovich*, No. 03-09-00367-CV, 2010 WL 2540689, at \*7 (Tex. App.—Austin June 23, 2010, no pet.) (mem. op.) (noting that "equitable disgorgement" is "a potential remedy for breach of fiduciary duty that does not require proof of actual damages"); *Beck*, 284 S.W.3d at 429 (noting that "if a client seeks the remedy of equitable fee forfeiture and proves a breach of fiduciary duty by the attorney, the client may obtain that remedy without need to prove causation or damages" when trial court finds "attorney's conduct was a 'clear and serious breach of duty' and that forfeiture of the fee (or some portion of it) is 'necessary to satisfy the public's interest in protecting the attorney-client relationship'" (quoting *Burrow*, 997 S.W.2d at 246)).

Given the nature of the equitable relief requested by Hall in his breach-of-fiduciary-duty claim and given the case law summarized above, we must conclude that Hall was not required to produce evidence to establish a prima facie case for the causation and damages elements under the circumstances present in this case. *Cf. First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 221 (Tex. 2017) (deciding in breach-of-fiduciary-duty case that "the church was not required to show causation and actual damages as to any equitable remedies it sought").[7]

---

[7] In a post-submission letter brief, Dyke acknowledges the decision by the supreme court in *First United Pentecostal Church of Beaumont v. Parker*, in which the court concluded that a

For all the reasons previously given, we conclude that Hall met his burden of establishing a prima facie case for each necessary element for his claim of breach of fiduciary duty. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c). Accordingly, we overrule Dyke's first issue on appeal.

---

party was not entitled to summary judgment on the ground that there was no evidence that any breach of fiduciary duty caused damages to the nonmoving party. 514 S.W.3d 214, 222 (Tex. 2017). In reaching its conclusion, the supreme court explained that the nonmoving party did not have to show causation and damages for the equitable remedies that it requested. *Id.* at 221. In light of the analysis from *Parker*, Dyke admits that under that case "Hall—claiming fee forfeiture—would not be required to show causation and actual damages."

However, Dyke contends that the analysis from *Parker* should be read in harmony with a prior opinion by this Court that he alleges provided more guidance regarding what evidence must be produced in a fee-forfeiture case. *See Gammon v. Hodes*, No. 03-13-00124-CV, 2015 WL 1882274 (Tex. App.—Austin Apr. 24, 2015, pet. denied) (mem. op.). In particular, Dyke notes that this Court stated that once the factual disputes relevant to a claim for breach of fiduciary duty "have been resolved by the trier of fact, the trial court must determine whether the attorney's conduct was a clear and serious breach of duty to his client, whether any of the attorney's compensation should be forfeited, and if so, the amount of forfeiture." *Id.* at *3. Similarly, Dyke points to a later portion of the opinion discussing how after the "disputed facts are resolved by the jury, the trial court exercises its discretion to determine, as a matter of equity, whether fee forfeiture should be imposed" and how in making that determination, trial courts should consider the following factors: "the adequacy of other remedies, the weight to be given all other relevant issues, and, most importantly, whether forfeiture is necessary to satisfy the public's interest in protecting the integrity of the attorney-client relationship." *Id.* at *7 (quoting *Miller v. Kennedy & Minshew, Prof'l Corp.*, 142 S.W.3d 325, 339 (Tex. App.—Fort Worth 2003, pet. denied)). In light of this language, Dyke contends that Hall was required but failed to present evidence of the factors listed above when attempting to present a prima facie case.

However, we disagree with Dyke's reading of *Gammon*. As set out above, the factors discussed in *Gammon* are factors for the trial court to consider when determining if a fee forfeiture is warranted *after* the trier of fact has already determined a breach-of-fiduciary claim in favor of a client. *See id.* at *3, *7. Accordingly, we do not read the opinion in *Gammon* as imposing any evidentiary burden on a party seeking to obtain the equitable relief of fee forfeiture in the circumstances present here. On the contrary, this Court explained in *Gammon*, as discussed in the body of this opinion, that trial courts may impose fee forfeiture for breach-of-fiduciary-duty claims regardless of whether the client proves any damages resulting from the breach. *Id.* at *3. Accordingly, we believe that the *Parker* case and the *Gammon* case both support our conclusion that Hall was not required to produce evidence to establish a prima facie case for causation and damages for his claim to survive a motion to dismiss under the TCPA.

**Valid Defense**

In his second issue on appeal, Dyke contends that the district court erred by failing to grant his motion to dismiss because he established by a preponderance of the evidence each essential element of a valid defense against Hall's claims. *See* Tex. Civ. Prac. & Rem. Code § 27.005(d). Specifically, Dyke contends that he pleaded in his response to Hall's petition the defense that Hall's "claims are barred . . . because they fail to state a claim for which relief can be granted." Building on that premise, Dyke argued at the dismissal hearing and argues on appeal that Hall's new declaratory and breach-of-fiduciary-duty claims impermissibly "rely on and seek to enforce the Disciplinary Rules" and that the district court cannot enforce the Disciplinary Rules in the manner suggested. *See* Tex. Disciplinary R. Prof'l Conduct preamble para. 15 (explaining that "[t]he fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule"); *see also Fleming v. Kinney ex rel. Shelton*, 395 S.W.3d 917, 931 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (concluding that trial court abused its discretion by admitting "testimony equating disciplinary rule violations with *per se* breaches of fiduciary duties").[8]

---

[8] In his appellee's brief, Hall contends that Dyke waived this defense by failing to properly plead it. Alternatively, Hall argues that this type of defense is not authorized under the TCPA because cases recognizing a "valid defense" under the TCPA have all involved "well-established affirmative defense[s] to liability." *See, e.g.*, *Youngkin v. Hines*, 546 S.W.3d 675, 681 (Tex. 2018) (determining that "Youngkin is entitled to dismissal because he established the affirmative defense of attorney immunity"); *see also* Tex. R. Civ. P. 94 (listing types of affirmative defenses). Because we ultimately conclude that Dyke did not meet his obligation of establishing by a preponderance of the evidence the elements of what he characterizes as a valid defense, we need not determine whether this type of defense falls within the purview of section 25.005(d) of the TCPA and will assume that Dyke properly pleaded this defense. *Cf.* Act of May 20, 2019, 86th Leg., R.S., H.B. 2730, § 3 (amending statute to clarify that dismissal is warranted "if the moving party establishes an affirmative defense *or other grounds*" (emphasis added)).

Although Hall unquestionably referenced the Disciplinary Rules of Professional Conduct when arguing that the Agreement was an attorney-client agreement, was an impermissible business agreement between an attorney and his client, was an improper contingency-fee agreement, and contained an unconscionable termination provision and although Hall sought one specific declaration that the Agreement is a prohibited transaction under the Rules, Dyke has not established that Hall was seeking to enforce the Disciplinary Rules against Dyke. Instead, the pleadings show that Hall relied on the Rules as support for his requests for declaratory relief regarding the nature of the Agreement and its terms. Similarly, the portion of Hall's second amended petition addressing his breach-of-fiduciary claims did not seek to enforce the Rules against Dyke and instead asserted that Dyke breached his fiduciary duties "by creating a one-sided unconscionable contract . . . that purportedly could not be terminated" and obligated Hall to pay Dyke "for no services," by failing to disclose that the fee under the Agreement "was unconscionable," and by failing "to advise his client that the agreement . . . could be terminated by Hall at any time," "that the interest being acquired by . . . Dyke was not fair and reasonable," and that Hall should seek independent counsel before entering the Agreement. Even if the language is similar to some of the wording of the Rules, Hall's claims are based on duties that lawyers owe to their clients. *See Walton*, 206 S.W.3d at 561 (stating that "a lawyer must conduct his or her business with inveterate honesty and loyalty, always keeping the client's best interest in mind" (quoting *Lopez v. Muñoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 867 (Tex. 2000) (Gonzales, J., concurring and dissenting))); *Gammon*, 2015 WL 1882274, at *2 (explaining that "[a]s a fiduciary, a lawyer has an affirmative duty to make a full and accurate confession of all his fiduciary activities, transactions, profits, and mistakes"); *Patrick*, 904 S.W.2d at 945 (noting that attorneys owe duty of disclosure to their clients).

25

While Dyke correctly points out that "the Rules do not define standards of civil liability of lawyers for professional conduct," *see Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 158 n.2 (Tex. 2004), and that "[t]he disciplinary rules of the State Bar do not give rise to a private cause of action," *see Lajzerowicz v. McCormick*, No. 04-05-00681-CV, 2006 WL 2871298, at *1 (Tex. App.—San Antonio Oct. 11 2006, no pet.) (mem. op.), courts "may deem these rules to be an expression of public policy" for the purpose of determining whether a contract is unenforceable for violating public policy, *see Cruse*, 273 S.W.3d at 775; *see also id.* at 776 (holding that party "carried its summary-judgment burden to demonstrate as a matter of law that" agreement "is illegal and void as against the public policy of Texas as expressed in . . . the disciplinary rules"); *Dardas v. Fleming, Hovenkamp & Grayson, P.C.*, 194 S.W.3d 603, 613 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (noting that court may deem Disciplinary Rules "to be an expression of public policy, so that a contract violating them is unenforceable as against public policy"), and for determining whether an attorney has violated a duty of care, *see DLA Piper LLP (US) v. Linegar*, 539 S.W.3d 512, 518 (Tex. App.—Eastland 2017, pet. denied) (rejecting idea that Disciplinary Rules "cannot be used as evidence of a violation of an existing duty of care"); *see also In re Frazin*, No. 02-32351-bjh-13, 2008 WL 5214036, at *57 (Bankr. N.D. Tex. Sept. 23, 2008) (mem. op.) (stating that "Texas courts have used the Rules as standards for conduct in . . . breach of fiduciary duty cases"); *Stephenson v. LeBoeuf*, 16 S.W.3d 829, 838 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (relying on Disciplinary Rule when determining that there was no evidence that lawyer "breached a fiduciary duty"). Moreover, courts have also considered whether particular agreements between attorneys and non-attorneys violated the Rules. *See Truyen Luong v. McAllister*, No. 01-17-00198-CV, 2018 WL 3651103, at *3, *4 (Tex. App.—Houston [1st Dist.] Aug. 2, 2018, pet. denied) (mem.

26

op.) (noting that type of agreement at issue was barred by Rule 8.04 when concluding that agreement was void); *In re Hartigan*, 107 S.W.3d 684, 689 (Tex. App.—San Antonio 2003, orig. proceeding [mand. denied]) (determining that "the arbitration clause does not violate Disciplinary Rule 1.08(g)").

Accordingly, we cannot conclude that Dyke has met his burden of establishing each essential element of a valid defense to Hall's claims and, therefore, overrule Dyke's second issue on appeal. *See* Tex. Civ. Prac. & Rem. Code § 27.005(d). For the reasons previously given, we conclude that the district court did not err by denying Dyke's motion to dismiss under the TCPA.

**Attorney's Fees and Sanctions**

In his final issue on appeal, Dyke contends that the district court erred by failing to award him attorney's fees and impose sanctions under section 27.009 of the TCPA. *See* Tex. Civ. Prac. & Rem. Code § 27.009(a) (requiring trial court to award reasonable attorney's fees and "sanctions against the party who brought the legal action" if "the court orders dismissal of a legal action" under TCPA). Essentially, Dyke argues that if we reverse the district court's ruling, we should remand the case with instructions requiring the district court to order Hall to pay attorney's fees and a sanction consistent with the evidence that Dyke presented to the district court. However, because we have determined that the district court did not err by denying the motion to dismiss, we deny Dyke's request to remand the case "for the award of costs, attorney's fees, and other expenses and the imposition of sanctions." *See Bumjin Park v. Suk Baldwin Props., LLC*, No. 03-18-00025-CV, 2018 WL 4905717, at *6 (Tex. App.—Austin Oct. 10, 2018, no pet.) (mem. op.).

27

Accordingly, we overrule Dyke's third issue on appeal.

## CONCLUSION

Having overruled all of Dyke's issues on appeal, we affirm the district court's order denying his motion to dismiss under the TCPA.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed

Filed:   October 17, 2019